LINCOLN NATIONAL LIFE INSURANCE CO. *v.*
READ, INSURANCE COMMISSIONER OF OKLA-
HOMA, ET AL.

No. 833.   Argued April 24, 25, 1945.—Decided June 11, 1945.

*Mr. Russell V. Johnson,* with whom *Mr. Charles E.
France* was on the brief, for appellant.

*Fred Hansen,* First Assistant Attorney General of Oklahoma, with whom *Randell S. Cobb,* Attorney General, was on the brief, for appellees.

Mr. Justice Douglas delivered the opinion of the Court.

The sole question presented by this appeal is whether Oklahoma has denied appellant the equal protection of the laws in violation of the Fourteenth Amendment.

Appellant is an Indiana corporation. It qualified to do business in Oklahoma in 1919 and has continued to do business there every year since then. The Oklahoma Constitution then provided, as it does now, in Article XIX, § 1, that:

"No foreign insurance company shall be granted a license or permitted to do business in this State until it shall have complied with the laws of the State, including the deposit of such collateral or indemnity for the protection of its patrons within this State as may be prescribed by law, and shall agree to pay all such taxes and fees as may at any time be imposed by law or act of the Legislature, on foreign insurance companies, and a refusal to pay such taxes or fees shall work a forfeiture of such license."

Section 2, Article XIX of the Oklahoma Constitution also required all foreign life insurance companies to pay per annum an "entrance fee" of $200, and provided:

"Until otherwise provided by law, domestic companies excepted, each insurance company, including surety and bond companies, doing business in this State, shall pay an annual tax of two per centum on all premiums collected in the State, after all cancellations are deducted, and a tax of three dollars on each local agent."

Appellant paid the "entrance fee." It made application for a license. And it satisfied the other requirements prescribed by Oklahoma for admission to do business in the State.[1] In each year subsequent to 1919 it made appli-

---

[1] See Okla. Stat. 1941, Tit. 36, §§ 47, 101.

cation for a renewal license and satisfied the various requirements of the State.

When a foreign insurance company desires, for the first time, to do business in Oklahoma, it must apply for a license to expire on the last day of February next after the issue of the license and on or before such date it must pay the gross premium tax on all premiums, less proper deductions, received by it in Oklahoma from the date of its license to and including December 31st of that year. When a foreign insurance company which holds a license to do business in Oklahoma for a particular year desires to do business there during the ensuing year, it must make application for a license on or before the last day of February of the current license year, pay the gross premium tax on premiums received in Oklahoma during the preceding calendar year, and on or before the last day of February of the ensuing license year pay the gross premium tax on premiums received by it in Oklahoma during the preceding calendar year. That is to say, the licenses issued expire on the last day of February next after their issuance; and to obtain a renewal the company must pay on or before the last day of February in each year the gross premium tax on all premiums received during the preceding calendar year. We are told by the Supreme Court of Oklahoma that that has been the uniform administrative practice of the Insurance Commissioner since 1909.

In 1941 Oklahoma enacted a law, effective April 25, which increased the 2 per cent gross premium tax to 4 per cent.[2] Okla. Stat. 1941, Tit. 36, § 104. Like the 2 per cent tax, this new tax is applicable only to foreign insur-

---

[2] This tax together with the entrance fee and the annual tax on each agent is "in lieu of all other taxes or fees, and the taxes and fees of any subdivision or municipality of the State." Okla. Stat. 1941, Tit. 36, § 104. On a failure to pay the tax the Insurance Commissioner "shall revoke the certificate of authority granted to the agent or agents of that company to transact business in this State." *Id.*

ance companies, not to domestic insurance companies. Appellant reported the gross premiums collected in Oklahoma during the calendar year 1941, paid the 4 per cent tax under protest, and brought this suit to recover the amount so paid. Appellant challenged the constitutionality of both the 2 per cent and the 4 per cent tax. The Supreme Court of Oklahoma allowed recovery of the taxes paid at the increased rate on premiums collected prior to the effective date of the act, April 25, 1941. But it disallowed recovery for the balance against the claim that the exaction of the tax from foreign insurance companies while domestic insurance companies were exempt violated the equal protection clause of the Fourteenth Amendment. 156 P. 2d 368. The case is here by appeal. § 237 Judicial Code, 28 U. S. C. § 344.

We can put to one side such cases as *Hanover Ins. Co.* v. *Harding,* 272 U. S. 494, where a foreign insurance company, having obtained an unequivocal license to do business in Illinois and built up a business there, was subsequently subjected to discriminatory taxation. In the present case each annual license, pursuant to the provisions of the Oklahoma Constitution, was granted on condition (1) that appellant agree to pay all such taxes and fees as the legislature might impose on foreign insurance companies and (2) that a refusal to pay such taxes or fees should work a forfeiture of the license. The payment of the gross premium tax on or before the expiration of the license year was always a condition precedent to the issuance of the license for the following year. Accordingly, appellant, unlike the foreign corporation in *Hanover Ins. Co.* v. *Harding, supra,* never obtained from Oklahoma an unequivocal license to do business there; it agreed to pay not only for the renewal but also for the retention of its annual license such taxes as Oklahoma might impose.

It has been held both before and after the Fourteenth Amendment that a State may impose on a foreign corpo-

ration for the privilege of doing business within its borders more onerous conditions than it imposes on domestic companies. *Paul* v. *Virginia,* 8 Wall. 168; *Ducat* v. *Chicago,* 10 Wall. 410; *Philadelphia Fire Assn.* v. *New York,* 119 U. S. 110. But it is said that a State may not impose an unconstitutional condition—that is it may not exact as a condition an infringement or sacrifice of the rights secured to the corporation by the Constitution of the United States.[3] The argument apparently is that since appellant is entitled to the equal protection of the laws, a condition cannot be imposed which results in its unequal and discriminatory treatment.

But that argument proves too much. If it were adopted, then the long-established rule that a State may discriminate against foreign corporations by admitting them under more onerous conditions than it exacts from domestic companies would go into the discard. Moreover, it has never been held that a State may not exact from a foreign corporation as a condition to admission to do business the payment of a tax measured by the business done within its borders. See *Continental Assurance Co.* v. *Tennessee,* 311 U. S. 5. That was the nature of the tax imposed in *Philadelphia Fire Assn.* v. *New York, supra.* That company was licensed to do business in New York under a law which required it to pay such a tax as its home State might impose on New York companies doing business there. After it had qualified to do business in New York, its home state exacted from foreign corporations a tax of 3 per cent on premiums received in that State. New York accordingly followed suit. The Court sustained the increased tax, saying that since the license of the foreign company was subject to the conditions prescribed by the New York statute, the amount of the tax

---

[3] See the cases reviewed in *Hanover Ins. Co.* v. *Harding,* 272 U. S. 494, 507–508; Henderson, The Position of Foreign Corporations in American Constitutional Law (1918), ch. VIII.

could at any time be increased for the future. "The State, having the power to exclude entirely, has the power to change the conditions of admission at any time, for the future, and to impose as a condition the payment of a new tax, or a further tax, as a license fee. If it imposes such license fee as a prerequisite for the future, the foreign corporation, until it pays such license fee, is not admitted within the State or within its jurisdiction. It is outside, at the threshold, seeking admission, with consent not yet given." 119 U. S. p. 119. And the equal protection clause does not require the tax or rate of tax exacted from a foreign corporation as a condition of entry to be the same as that imposed on domestic corporations. *Hanover Ins. Co.* v. *Harding, supra,* pp. 510–511.

The fact that Oklahoma collects the tax at the end of the license year is not material. That was done in *Philadelphia Fire Assn.* v. *New York, supra.* The controlling fact is that the tax though collected later was levied upon the privilege of entering the State and engaging in business there.[4] *Continental Assurance Co.* v. *Tennessee, supra.*

*Affirmed.*

Mr. Justice Roberts dissents.

---

[4] It is not contended that appellant is engaged in interstate commerce. Hence we do not have presented any question concerning the effect of *United States* v. *South-Eastern Underwriters Assn.,* 322 U. S. 533, on the problem.