CHRISTIAN, J.
 

 Plaintiffs, who are 18 Texas fire and casualty insurance companies, appeal from a judgment deling recovery of retaliatory taxes in the aggregate amount of
 
 *0
 
 $929,833.42 imposed on them for the years 1959 and 1960. The levy had been made by respondent Board of Equalization, pursuant to Insurance Code section 685 et seq., upon the board’s determination that the insurance tax laws of the State of Texas discriminate against California-based insurance companies and hence, under the California statute, call for a retaliatory levy.
 

 Almost every state imposes some kind of retaliatory tax upon insurance companies domiciled in any other state which does not extend reciprocity of tax treatment to out-of-state insurance companies. (See Pelletier,
 
 Insurance Retaliatory Laws
 
 (1964) 39 Notre Dame Law. 243, for a survey of these statutes.) The Constitution of California has for many years authorized retaliatory taxation of foreign insurance companies (art. XIII, § 14 4/5, subd. (f)(3) and legislation providing for such levies has been in effect since 1873. (Stats. 1873, ch. 610, § 18.) The common purpose of such legislation in the several states has been to discourage any state from imposing discriminatory taxes or other burdens upon out-of-state companies. The effort seems to have been very largely successful; in any event taxes on insurance premiums have stayed close to 2 percent in most states, for both domestic and out-of-state insurers. (39 Notre Dame Law.,
 
 supra,
 
 at p. 247.)
 

 This situation of equilibrium was disturbed when the United States Supreme Court in
 
 United States
 
 v.
 
 South-Eastern Underwriters Assn.
 
 (1944) 322 U.S. 533 [88 L.Ed. 1440, 64 S.Ct. 1162], held that the business of insurance could be the subject of interstate commerce. The decision was believed to invalidate retaliatory taxation (4 Assembly Interim Com. Report No. 15, Revenue and Taxation (1964) p. 59) and the California Legislature the following year repealed
 
 [1]
 
 Insurance Code sections 1560 and 1561, the implementing legislation which was then in effect. This action was too hasty; Congress the same year enacted the MeCarranFerguson Act (59 Stat. 33; 15 U.S.C., §§ 1011-1015) returning to the states authority to regulate and tax the insurance industry. (Also see
 
 Prudential Ins. Co.
 
 v.
 
 Benjamin
 
 (1946) 328 U.S. 408 [90 L.Ed. 1342, 66 S.Ct. 1142, 164 A.L.R. 476].)
 

 The California constitutional provision authorizing the imposition of retaliatory taxes had remained in effect, but it was not self-executing. Accordingly, in 1959 the Legislature enacted Insurance Code section 685 et seq., imposing retalia
 
 *1
 
 tory taxes upon foreign insurance companies whose home states impose taxes on similar California companies that are higher than California’s levies upon those states’ companies.
 
 [2]
 

 A troublesome difficulty emerged: article XIII, section 14 4/5, subdivision (f)(3) of the Constitution at that time authorized retaliatory taxation only when the foreign state imposed upon California insurers burdens exceeding those which it imposed upon its domestic insurers, whereas insurance Code section 685 purported to require retaliation by California whenever a foreign state charged California companies more than California charged the companies of that state. The type of retaliatory tax contemplated by the California constitutional provision may be termed a
 
 discriminatory
 
 tax while the tax imposed by the legislation is of a type known as a
 
 comparative
 
 retaliatory tax. In
 
 Franklin Life Ins. Co.
 
 v.
 
 State Board of Equalization
 
 (1965) 63 Cal.2d 222 [45 Cal.Rptr. 869, 404 P.2d 477], the Supreme Court held (adopting a position already taken by the Attorney General in 35 Ops.Cal.Atty.Gen. 182) that although the new statute would be unconstitutional if applied to a case where the discrimination contemplated by article XIII, section 14 4/5, subdivision (f)(3), is not present, no constitutional defect exists in any ease which meets both the discriminatory test of the constitutional provision and the comparative test of Insurance Code section 685. (63 Cal.2d 222, 227.)
 

 By an amendment adopted November 3, 1964, Constitution article XIII, section 14 4/5, subdivision (f) (3), was made to conform to the “comparative” test of Insurance Code section
 
 *2
 
 685. Thus the
 
 Franklin Life
 
 problem will not be seen in-future eases. However, during the years 1959 and 1960 which we are concerned with in the present appeal, the
 
 FrankUn Life
 
 approach was still required. We must therefore rule upon appellants’ attack on the trial court’s determinations that Texas law discriminates against California insurers doing business in Texas and that the burdens placed by Texas upon California insurers doing business in Texas are greater than the burdens placed by California upon Texas insurers doing business in California. Appellants also contend that the California statute violates the commerce and equal protection clauses of the U. S. Constitution and that in any event the tax imposed in this case was erroneously computed.
 

 The facts are not disputed; the parties cooperated in submitting to the trial court detailed stipulations which incorporated extensive documentary exhibits. These stipulations were adopted by the court in its findings of fact.
 

 California’s gross premiums tax rate is 2.35 percent. (Cal. Const., art. XIII, § 14 4/5, subd. (d).) Texas imposes a tax of 3.85 percent on the gross premiums of all fire and casualty insurers from policies written on property or risks located in Texas. (Tex.Rev.Civ.Stat., art. 7064.) But the rate may be reduced to as little as 1.1 percent depending on the company’s rate of investment in Texas securities, as defined in the statute. The company is to determine the amount it has invested in the state in which it has the highest percentage of its admitted assets invested. Then it calculates the relationship, as a percentage, between the value of its Texas securities and the amount invested in securities of the state of its highest investment. That percentage determines the rate of the company’s gross premium tax according to the following scale:
 

 For example, assume that a California insurer has $100,000 invested in California, $75,000 in Oregon, and $80,000 in
 
 *3
 
 Texas. Its highest percentage of investment is in California. Therefore, it calculates that its Texas securities are 80 percent of its securities in the state of highest investment. The Texas tax rate is then 2.75 percent. That comparatively unfavorable rate would be applied even if a disproportionately smaller share of the insurer’s premium revenue came from Texas business.
 

 The evidence established that Texas investments of the type considered good and prudent investments for California fire and casualty companies were available at all times since 1957. Texas municipal bonds, for instance, are widely held by Texas and non-Texas insurers.
 

 Evidence was received showing the actual effect of the statutory scheme in the year 1960 for premiums earned in 1959. All insurers domiciled in Texas paid at the minimum rate of 1.1 percent. Only 26 of the 458 foreign insurers which did business in Texas paid at the 1.1 percent rate and a total of only 39 paid at any rate below the maximum. Only 9 percent of all California insurers doing business in Texas in the years 1959 and 1960 qualified for any rate below the maximum. Upon this evidence the trial court concluded, adopting the view expressed earlier by the Attorney General (39 Ops.Cal.Atty.Gen., 98), that California insurers doing business in Texas were subjected to both discrimination and comparative disadvantage and that a retaliatory levy was called for by Insurance Code section 685.
 

 Does Texas Law Discriminate?
 

 Appellants contend that the Texas statute is not discriminatory because the scale of gross premium tax rates merely compensates for state and federal taxes paid on Texas investments. It is argued that all insurers therefore pay the equivalent of the maximum rate and that if Texas did not attempt so to equalize tax burdens there would be a greater burden placed upon insurers owning Texas securities. Consistent with this theory, a Texas court has held for purposes of applying the Texas retaliatory statute that the normal Texas rate must be calculated at the maximum provided in the schedule because payment at the lower rates plus taxes on Texas investments equals payment at the maximum rate.
 
 (Board of Ins. Comrs.
 
 v.
 
 Prudential Fire Ins. Co.
 
 (Tex.Civ.App., 1942) 167 S.W.2d 578, 579.) But the Texas courts have recognized that the purpose of the statute is to provide a
 
 *4
 
 market for securities issued by Texas governmental entities.
 
 (Ibid; Kansas City Title Ins. Co.
 
 v.
 
 Butler
 
 (Tex.Civ.App. 1952) 253 S.W.2d 318, 320, 321.) No evidence was presented in the present case of any actual relationship between the gross premiums rate schedule and other taxes levied upon the holders of Texas securities.
 

 The evidence reviewed above demonstrates the discriminatory effect of the Texas statute. The reason so few non-Texas insurers have qualified for favorable treatment is clear: the requirements of the schedule bear no relationship to the volume of the insurer’s Texas business. It was justly observed by the Attorney General (39 Ops.Cal.Atty.Gen.,
 
 supra,
 
 at p. 100) that ‘1 Consequently the ‘Texas securities’ investments standard represents no problem to Texas companies, and conversely, a major problem to foreign companies.” It is natural for an insurance company to hold a major proportion of its assets in the state of domicile. Yet the Supreme Court of Minnesota said in
 
 Republic Ins. Co.
 
 v.
 
 Commissioner of Taxation
 
 (1965) 272 Minn. 325 [138 N.W.2d 776, 782] : "By following the described investment policy in their home states foreign companies operating in Texas ultimately are subject to a tax rate for Texas business about three times that imposed on a domestic company. ’ ’
 

 We should point out in passing that in determining whether Texas "discriminates” against out-of-state insurers we are not referring to discrimination amounting to a denial of equal protection under the Fourteenth Amendment to the Constitution of the United States. Article XIII, section 14 4/5, subdivision (f)(3), of the Constitution of California speaks of
 
 obligations
 
 imposed upon California insurers domiciled in the foreign state. Thus the term "discrimination” means in this context ‘ ‘ excess obligations. ’ ’
 

 Appellants’ argument that the Texas schedule of rates merely attempts to compensate for other burdens upon the holders of Texas securities disregards the fact that the schedule provides for no relationship whatever between Texas-earned premiums and taxes thereon, on the one hand, and Texas assets and taxes thereon, on the other hand. The fictional character of the equalization argument is further demonstrated by the fact that a foreign insurer which attains only the 74 percent mark on its Texas securities receives absolutely no ‘ ‘ equalization, ’ ’
 

 
 *5
 
 Appellants next contend that any discrimination in the operation of the Texas law results from the investment decisions of the insurance companies, citing
 
 Franklin Life Ins. Co.
 
 v.
 
 State Board of Equalization
 
 (1965) 63 Cal.2d 222, 233 [45 Cal.Rptr. 869, 404 P.2d 477]. There the California Supreme Court held that the California retaliatory statute did not deny equal protection even though the principal place of business deduction
 
 [3]
 
 so reduced the California tax burden on small companies with a low volume of business that the foreign burden was greater than the California burden, with the effect that the retaliatory tax applied to small, but not large, insurers. The court held that the statute does not by its terms discriminate as to the size of the insurer and that discrimination does not necessarily follow from the terms of the statute. After determining that there was no discrimination under the equal protection clause, the court added: ‘ ‘ Any possible discrimination in operation is attributable to the Company’s investment decision with regard to its principal place of business.” (63 Cal.2d at p. 233.) Even if this dictum were to be applied to the present case, the greater Texas burden necessarily flows from the terms of the Texas statute itself.
 

 It is argued by appellants that a series of letters exchanged in 1944 by the California Insurance Commissioner and the chairman of the Texas Board of Insurance constitute an administrative determination that Texas law does not discriminate. These letters dealt with certain details in the construction of Texas Revised Civil Statutes, articles 7064 and 7064a. The California commissioner concluded that since it was doubtful whether the Texas taxes in question were taxes upon the franchise of transacting specific lines of insurance or upon insurance generally, “we have concluded that in the case of Texas insurers transacting fire insurance in California, the
 
 discriminatory
 
 tax provisions of Article 7064a of your statute do not call for the application of our retaliatory law.” (Italics added.) Because of this doubt strict construction of the California retaliatory tax law prevented application of the tax.
 
 (Bankers Life Co.
 
 v.
 
 Richardson
 
 (1923) 192 Cal. 113 [218 P. 586].) Thus there was no determination that the Texas tax was non-diseriminatory. Furthermore, at the time of the correspondence California law did not permit fire insurers to issue health or accident insurance. Texas law
 
 *6
 
 permitted it. From this difference, doubt arose as to the applicability of the Texas statute. Subsequently, California law has been changed to permit the admission of an insurer for all classes of insurance. (Ins. Code, § 700.01, added by Stats. 1947, ch. 1070, § 1, p. 2471.) Hence, the correspondence would be obsolete even if it had constituted an administrative decision of nondiscrimination. We conclude that Texas law does discriminate against California insurers.
 

 Does Texas Law Impose Comparative Disadvantage?
 

 Appellants argue that, since all of them qualify for the minimum Texas rate by virtue of their holdings of Texas securities, a similar California insurer doing business in Texas would hold the same amount of Texas securities and would therefore also qualify for the minimum Texas rate. Thus in comparing the Texas burden upon a California insurer, and the California burden on a Texas insurer, a Texas rate of 1.1 percent is to be used to compute the Texas burden and a California rate of 2.35 percent is to be used to compute the California burden. As a result of this comparison, appellants claim that the Texas burden is lower and that Insurance Code section 685 therefore cannot be applied to them. The language of section 685 does not suggest so extraordinary a construction of the term “similar insurers.” Moreover, the decisions which have considered the method to be employed in making interstate comparisons do not support appellants’ contention. In the single California case which deals with the problem,
 
 Bankers Life Co.
 
 v.
 
 Richardson, supra,
 
 192 Cal. 113, 124, the Supreme Court held (in that instance to the benefit of the foreign insurer) that the retaliating jurisdiction should make a levy “sufficient to make the total equal to the amount that would be realized were the rule of taxation of the foreign state, under whose laws the foreign company was organized, applied to such foreign company’s business” transacted in the retaliating state.
 
 (Cochrane
 
 v.
 
 Bankers Life Co.
 
 (8th Cir. 1929) 30 F.2d 918, 922; also see
 
 Life & Cas. Ins. Co.
 
 v.
 
 Coleman
 
 (1930) 233 Ky. 350 [25 S.W.2d 748, 751].)
 

 The Supreme Court of Kansas in construing the application to a Texas insurer of the Kansas retaliatory statute, which is substantially identical to Insurance Code section 685, held that the proper method of determining the Texas burden is to inquire “what amount in taxes . . . would a Kansas company, similar to the Texas company, be required to pay to the
 
 *7
 
 state of Texas, if it operated in that state under the same conditions that the Texas company operated in Kansas, that is, without the Kansas company having invested any of its assets in Texas securities?”
 
 (Employers Cas. Co.
 
 v.
 
 Hobbs
 
 (1940) 152 Kan. 815, 817 [107 P.2d 715].) Of course, the maximum Texas rate of 3.25 percent would apply and the Kansas court held that retaliation was called for. (Also see
 
 Republic Ins. Co.
 
 v.
 
 Commissioner of Taxation, supra,
 
 272 Minn. 325 [138 N.W.2d 776] ;
 
 Kansas City Life Ins. Co.
 
 v.
 
 State
 
 (1953) 265 Wis. 414 [61 N.W.2d 816];
 
 Occidental Life Ins. Co.
 
 v.
 
 Holmes
 
 (1938) 107 Mont. 48 [80 P.2d 383].)
 

 We have concluded that the trial court was correct in determining that the proper comparison is between the impact of the Texas tax upon a Texas insurer owning Texas securities and the impact of the same tax on a California insurer owning California securities; that is to say, the Texas taxing formula is to be applied to a California set of facts in determining whether the Texas statute imposes excess burdens upon “similar insurers” as contemplated by Insurance Code section 685.
 

 We now consider appellants’ contentions that the California statute violates the commerce and equal protection clauses of the U. S. Constitution.
 

 The Commerce Clause
 

 In 1869 the United States Supreme Court held that insurance was not interstate commerce under article I, section 8, clause 3, of the United States Constitution. Thus the business of insurance was subject to state regulation.
 
 (Paul
 
 v.
 
 Virginia,
 
 75 U.S. (8 Wall.) 168, 183 [19 L.Ed. 357, 361].) But in 1944, the court held in
 
 United States
 
 v.
 
 South-Eastern Underwriters Assn., supra,
 
 that interstate insurance activity was commerce falling within the Sherman Anti-Trust Act. To settle resulting questions regarding the states’ power to tax and regulate the business of insurance, Congress enacted the McCarran-Ferguson Act the following year. (59 Stats. 33; 15 U.S.C., §§ 1011-1015.) The new statute provided in section 2, subdivision (a), that “the business of insurance . . . shall be subject to the laws of the several states which relate to the regulation or taxation of such business.” The first decision interpreting the McCarran Act.
 
 Prudential Ins. Co.
 
 v.
 
 Benjamin, supra,
 
 328 U.S. 408, 429-430 [90 L.Ed. at pp. 1359-1360], declared that the congressional purpose was to give effect to then existing and future systems of state taxation
 
 *8
 
 and regulation of insurance. The court determined that, since Congress must have been aware that such existing systems displayed many variations, it must have been intended to permit such variations to exist and to be extended. The court did not conclude that Congress validated every existing state regulation on tax, observing that “there can be no inference that Congress intended to circumvent constitutional limitations upon its own power.” (328 U.S. at p. 430 [90 L.Ed. at p. 1360].) The court held, however, that Congress “clearly put the full weight of its power behind existing and future state legislation to sustain it from any attack under the commerce clause to whatever extent this may be done with the force of that power behind it, . . .” (328 U.S. at p. 431 [90 L.Ed. at p. 1361].) The
 
 Benjamin
 
 decision was followed by another,
 
 Prudential Ins. Co. of America
 
 v.
 
 Hobbs
 
 (1946) 328 U.S. 822 [90 L.Ed. 1602, 66 S.Ct. 1360]
 
 (per curiam),
 
 which disposes of appellants’ commerce clause contention. There the court affirmed
 
 In re Insurance Tax Cases
 
 (1945) 160 Kan. 300 [161 P.2d 726], citing
 
 Benjamin, supra,
 
 and
 
 Robertson
 
 v.
 
 California
 
 (1946) 328 U.S. 440 [90 L.Ed. 1366, 66 S.Ct. 1160]. The Kansas Supreme Court had upheld, over commerce clause objections, both the Kansas primary tax and retaliatory tax on foreign insurers. (161 P.2d at p. 734; see
 
 id.
 
 at 730 for the Kansas retaliatory law, Kan. G.S. 1935, 40-253.) The. Kansas court held that the taxes in question placed no unreasonable burden on the interstate commerce of the insurers. (161 P.2d at p. 734.) The court concluded that, since the questioned taxes had been held to be valid before
 
 United States
 
 v.
 
 South-Eastern Underwriters Assn., supra,
 
 322 U.S. 533, and since the McCarran Act left regulation of insurance to the states,
 
 South-Eastern
 
 could not invalidate the challenged Kansas statutes. (161 P.2d at p. 735.) Since the Supreme Court of the United States affirmed this decision under the authority of
 
 Benjamin, supra,
 
 we take it as settled that retaliatory legislation of the character here under consideration is not vulnerable to attack under the commerce clause. (See Pelletier,
 
 op.cit. supra,
 
 at 248-251.)
 

 The Equal Protection Clause
 

 In
 
 Lincoln Nat. Life Ins. Co.
 
 v.
 
 Read
 
 (1945) 325 U.S. 673, 675 [89 L.Ed. 1861, 1863, 65 S.Ct. 1220], the United States Supreme Court upheld, over equal protection objections, an Oklahoma tax on foreign insurers where there was no tax imposed on domestic insurers. The Oklahoma statute
 
 *9
 
 required foreign insurers to obtain an annual license to conduct business in Oklahoma. No license could be granted until the applicant complied with Oklahoma laws and agreed to pay all taxes which might be imposed, at any time, on foreign insurers. At the time the insurers first qualified to do business in Oklahoma, a 2 percent tax was imposed on premiums collected in Oklahoma. Later the tax was increased to 4 percent. No similar tax was imposed on domestic insurers. The court distinguished eases such as
 
 Hanover Fire Ins. Co.
 
 v.
 
 Harding
 
 (1926) 272 U.S. 494 [71 L.Ed. 372, 47 S.Ct. 179, 49 A.L.R. 713], on the ground that there the insurer was subjected to discriminatory taxation after having obtained an unequivocal license to do business in the taxing state. In
 
 Lincoln
 
 payment of the tax was imposed as a condition precedent to the issuance of a license for the following year. The court held that “the equal protection clause does not require the tax or rate of tax exacted from a foreign corporation as a condition of entry to be the same as that imposed on domestic corporations.” (325 U.S. at p. 678 [89 L.Ed. at p. 1865].) Thus Oklahoma could impose a tax, or increase the rate of tax on a foreign insurer, as a condition precedent to admission into the state to do business. Put more concisely, a foreign corporation is not a “person within [a state’s] jurisdiction” entitled to equal protection until it complies with such conditions precedent. (See 73 Harv.L.Rev. (1960) 1595, 1608.)
 

 Lincoln
 
 partially relied on
 
 Philadelphia Fire Assn.
 
 v.
 
 New York
 
 (1886) 119 U.S. 110 [30 L.Ed. 342, 7 S.Ct. 108], in which a retaliatory tax was upheld over equal protection objections. As in
 
 Lincoln,
 
 however, payment of the tax was a condition precedent to obtaining a renewed annual license. The court stated, at page 119, that “The State, having the power to exclude entirely, has the power to change the conditions of admission at any time, for the future, and to impose as a condition the payment of a new tax. or a further tax, as a license fee.” Until such fees are paid the insurer is not within the jurisdiction of the state. As in
 
 Lincoln,
 
 a lower tax existed at the time of initial admission and the action was precipitated by a subsequent raising of the tax. (119 U.S. at pp. 119-120 [30 L.Ed. at pp. 246-247].)
 

 In the present ease appellants point out that California, unlike most states, grants certificates of authority to transact insurance business for an indefinite period, subject to payment of a $10 annual fee. (Ins. Code, § 701, § 705 as amended
 
 *10
 
 by Stats. 1963, ch. 1917, § 1.) A certificate is not granted until the applicant conforms to requirements of California law prerequisite to its issue. After such issue the insurer must continue to comply with requirements of law. (Ins. Code, § 700.)
 

 Unlike insurers who must obtain an annual license to conduct business, appellants appear to have obtained “unequivocal” licenses to do business. The fact that the California certificates of authority could be revoked for failure to pay taxes or to otherwise comply with the law (Ins. Code, § 701) does not alter that position.
 
 Hanover Fire Ins. Co.
 
 v.
 
 Harding, supra,
 
 272 U.S. 494, is said to stand for the proposition that once a foreign corporation has been unconditionally admitted to do business in a state it must be granted equal protection. (272 U.S. at p. 514 [71 L.Ed. at p. 382].) We conclude that appellants here are entitled to equal protection. (See
 
 Connecticut General Life Co.
 
 v.
 
 Johnson
 
 (1938) 303 U.S. 77 [82 L.Ed. 673, 58 S.Ct. 436], holding that foreign insurers are entitled to due process in California.)
 

 It was proved that 10 of the appellants were admitted to transact insurance business prior to the enactment of Insurance Code section 685. Therefore it is contended under the authorities just reviewed that the retaliatory tax has been applied unconstitutionally to those 10 appellants. We observe first that the California Supreme Court dealt with the equal protection issue in the
 
 Franklin Life
 
 ease,
 
 supra.
 
 In rejecting the contention that the California retaliatory tax denies equal protection, the court stated: “The United States Supreme Court . . . has long recognized the elementary principle that a distinction in tax statutes between parties does not violate the equal protection clause if such distinction rests upon a rational basis. That court has said, ‘Neither due process nor equal protection imposes upon a state any rigid rule of the equality of taxation. ... A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it.’ [Citations.] ” (63 Cal.2d at pp. 232-233.)
 

 The court then held that no discrimination necessarily results from the terms of the statute. Of course the court was specifically considering possible discrimination based on the size of the insurer. But in rejecting this specific attack,
 
 *11
 
 the court implicitly rejected the general attack presented by appellants here. We are bound to follow that holding.
 

 Except for
 
 Franklin,
 
 we have found no case dealing directly with the question whether insurance retaliation statutes discriminate on the basis of a reasonable classification. (But see Pelletier,
 
 op.cit. supra,
 
 at p. 249, fn. 21.)
 
 Hanover Fire Ins. Co.
 
 v.
 
 Harding, supra,
 
 272 U.S. 494, 514-516 [71 L.Ed. at pp. 382-383], merely held that a primary tax on premiums cannot be imposed on foreign insurers at a grossly higher rate than on domestic insurers. A franchise tax dependent on a foreign-domestic distinction alone is not a reasonable classification where both classes of corporation carry on essentially the same type of business.
 
 (Southern Ry. Co.
 
 v.
 
 Greene
 
 (1910) 216 U.S. 400, 417-418 [54 L.Ed. 536, 541-542, 30 S.Ct. 287].) But here the purpose of the retaliatory law is to secure reciprocity.
 
 (Bankers Life Co.
 
 v.
 
 Richardson, supra,
 
 192 Cal. 113, 124.) It is designed to achieve uniformity of treatment and not to discriminate. In view of the relative uniformity of insurance taxation in the several states, the California law seems reasonably designed to accomplish its purpose. Therefore we hold that for purposes of this tax foreign insurers are classified separately on a rational basis and that there was no denial of equal protection.
 

 Computation of the Tax
 

 Appellants assert two errors in computation of the tax. First, sums paid by appellants to the Pacific Fire Bating Bureau were not added to the California burden for comparative purposes. But California law did not require that appellants employ a rating service. The Insurance Code only requires that rates be adequate, nondiscriminatory and not excessive (Ins. Code, § 1852.) The state does not establish rates. Texas law, on the other hand, imposes a special tax to finance the rate-regulating function of the Board of Insurance Commissioners. (Tex. Ins. Code, arts. 5.24, 5.29.) Appellants contend that as a practical necessity foreign insurers must utilize a rating service to avoid charging excessive, inadequate or discriminatory rates. But the Texas tax for rating is imposed by the laws of Texas, whereas payments to the Pacific Fire Bating Bureau are not “obligations . . . directly imposed on similar insurers . . . under the statutes of this State, . . .”
 

 Finally, appellants point out that Insurance Code section 685.1 provides that the retaliatory tax does not apply
 
 *12
 
 to “special purpose obligations or assessments heretofore imposed by another state or foreign country in connection with particular kinds of insurance, other than property insurance ; . . . ” By Texas law, a special additional tax is imposed on premiums from motor vehicle insurance. (Tex Ins. Code, art. 5.12.) This tax, at a rate of one-fifth of one percent, is used to administer the motor vehicle provisions of the Texas code. Appellants claim that the Texas levy relates to liability, not property, insurance. The trial court upheld respondent’s claims that it relates to property insurance and is not exempt from retaliation. Neither the Texas nor California insurance codes defines property insurance. But Texas Insurance Code article 5.01 defines motor vehicle insurance as follows: “Motor vehicle or automobile insurance . . . shall be taken and construed to mean every form of insurance on any automobile ... or necessitated by reason of the liability imposed by law for damages arising out of ownership, operation, maintenance, or use in this State of any automobile. ...”
 

 Respondent contends that since this definition includes collision, fire, theft, and comprehensive coverage, and since appellants have not segregated these property coverages from liability coverage, strict construction of the exemption established by section 685.1 prevents consideration of taxes paid pursuant to Texas Insurance Code article 5.12.
 

 The California Insurance Code defines liability insurance: 11 § 108 Liability. Liability insurance includes: (a) Insurance against loss resulting from liability for injury, fatal or nonfatal, suffered by any natural person, or resulting from liability for damage to property, or property interests of others but does not include workmen’s compensation, common carrier liability, boiler and machinery, or team and vehicle insurance.” (Stats. 1953, ch. 1489, § 1, p. 3100.) Subdivision (b) of that section expressly includes certain disability, funeral and accidental death benefits “in the case of an automobile liability policy . . . when issued with or supplemental to the insurance defined in subdivision (a) ; . . .” (Stats. 1957, ch. 550, § 1, p. 1644; amended by Stats. 1959, ch. 328, § 1, p. 2255; amended by Stats. 1965, ch. 1557, § 1, p. 3649.) The 1965 amendment,
 
 supra,
 
 added a second paragraph to subdivision (b) to broaden automobile liability coverage still further. The subdivision now includes disability insurance covering members of the insured’s household and others named in the policy and other forms of disability insurance. Insurance Code section 116 defines automobile insurance as
 
 *13
 
 including insurance of automobile owners and others 11 against hazards incident to ownership, maintenance, operation and use of automobiles, other than loss resulting from accident or physical injury, fatal or nonfatal, to, or death of, any natural person. ’1 Finally the Vehicle Code, section 16456, speaks of a ‘1 motor vehicle liability policy” as covering the insured in the operation of vehicles registered in his name.
 

 Examination of these statutes shows that protection against injury to other persons or their property is clearly liability insurance. These injuries arise from the ‘ ‘ operation of vehicles.” It is not clear, however, that collision, fire, theft, and comprehensive protection is liability insurance. Thus, motor vehicle insurance may combine both forms, liability and property. In this ambivalent situation we resort to the principle that the retaliatory law must be ‘1 strictly construed, executed with care, and not applied to any ease that does not fall plainly within the letter of the law.”
 
 (Bankers Life Co.
 
 v.
 
 Richardson, supra,
 
 192 Cal. 113, 124.) Since motor vehicle insurance is not clearly property insurance, it 1 ‘ does not fall plainly within the letter of the law” and, therefore, the retaliatory tax can not be applied to assessments levied pursuant to Texas Insurance Code article 5.12. The rule of strict construction is for the benefit of the taxpayer, not the state.
 

 We therefore conclude that the judgment must be modified by augmenting the schedule of recovery consented to in the trial court by respondent, so as to include appropriate sums to reimburse each appellant for the additional tax on premiums from motor vehicle insurance imposed by Texas Insurance Code article 5.12. The cause is remanded to the trial court for determination of the amounts to be allowed. The trial court need not take further evidence unless it be so advised. As modified, the judgment is affirmed.
 

 Devine, P. J., and Rattigan, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied November 30, 1967. Mosk, J., did not participate therein.
 

 [1]
 

 Stats. 1945, ch. 921.
 

 [2]
 

 "
 
 When by or pursuant to the laws of any other state or foreign country any taxes, licenses and other fees, in the aggregate, and any fines, penalties, deposit requirements or other material obligations, prohibitions or restrictions are or would be imposed upon California insurers, or upon the agents or representatives of such insurers, which are in excess of such taxes, licenses and other fees, in the aggregate, or which are in excess of the fines, penalties, deposit requirements or other obligations, prohibitions, or restrictions directly imposed upon similar insurers, or upon the agents or representatives of such insurers, of such other state or country under the statutes of this State, so long as such laws of such other state or country continue in force or are so applied, the same taxes, licenses and other fees, in the aggregate, or fines, penalties or deposit requirements or other material obligations, prohibitions, or restrictions, of whatever kind shall be imposed upon the insurers, or upon the agents or representatives of such insurers, of such other state or country doing business or seeking to do business in California. Any tax, license or other fee or other obligation imposed by any city, county, or other political subdivision or agency of such other state or country on California insurers or their agents or representatives shall be deemed to be imposed by such state or country within the meaning of this article.” (Ins. Code, § 685.)
 

 [3]
 

 California Constitution, article XIII, section 14 4/5, subdivision (e).