[Civ. No. 55251. Second Dist., Div. Four. Nov. 2, 1979.]

WESTERN AND SOUTHERN LIFE INSURANCE COMPANY,
Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, Ernest P. Goodman, Assistant Attorney General, and Timothy G. Laddish, Deputy Attorney General, for Defendant and Appellant.

Frost & Jacobs, Alan R. Vogeler, Gerald L. Baldwin, Paul, Hastings, Janofsky & Walker, and Ronald M. Oster for Plaintiff and Respondent.

OPINION

**KINGSLEY, J.**—This case involves the constitutionality of two provisions of California law imposing taxes on foreign insurance companies. The trial court found in favor of the plaintiff insurance company, holding that one of those provisions (the so-called retaliatory tax) was unconstitutional. It also made findings on other issues as set forth in its memorandum of intended decision as follows:

"In the above-entitled matter now submitted, judgment is for plaintiff for the full amount of tax refunds sought in accordance with the enclosed Memorandum Decision plus interest.

"To dispose of all issues and avoid a possible retrial following appeal the court further finds as follows:

"A. Plaintiff is barred from claiming that it should be treated herein as a California insurer because it failed to so claim in its claim for refund. R. & T. Code Section 13103. Cf *American Chemical Corp.* vs. *County of Los Angeles* (1974) 42 C.A.3d 45 at 55-56, hearing denied, cert. den. 422 U.S. 1007.

"B. To the extent that plaintiff's principal office deduction is allowed to plaintiff, its retaliatory tax will be correspondingly increased. The premium tax and the retaliatory tax are mutually interdependent.

"C. The 1966 Amendment to California Constitution, Article XIII, Section 14-4/5 (e) and R. & T. Code Sec. 12441 [*sic*] were not intended by the law-makers to be retroactive and can not be applied to 1966 taxes. Cf *Western & Southern Life Ins. Co.* v. *State Board of Equalization* (1970) 4 C.A.3d 21, hearing denied, at 34-35.

"The stipulation of facts on file herein is adopted as the court's findings of fact. Plaintiff is ordered to prepare appropriate conclusions of law and judgment, submit them to defendant for approval as to form and accuracy and then to the court for signature."

The case was submitted on a stipulation of facts. They may be summarized as follows:

Plaintiff is an Ohio corporation, licensed in 1956 to do business in California. While its principal office is in Ohio it owns a building in Los Angeles which it utilizes as its principal office for California. Approximately 76 percent of that building is leased by it to tenants not connected with the operations of plaintiff. The taxes imposed by Ohio, on a California corporation doing business in Ohio, exceed the taxes imposed on foreign corporations doing business in California, under the basic premium tax imposed by California. The "retaliatory tax" herein involved imposes on plaintiff (and similar insurers) an additional tax equal to that difference. It is the validity of that additional tax that is the principal issue in this case.

Prior to 1966, California allowed an insurance company to deduct from its premium tax, the amount of local property tax imposed on its principal office in this state; by an amendment in that year, the real

property tax deduction was amended so that foreign insurers,[1] but not domestic insurers, were limited to a deduction equal only to the proportion of such taxes attributable to the portion of the home office building used by the insurer. The effect, therefore, was to impose on a foreign insurer a larger premium tax than that imposed on domestic insurers.

I

Retaliatory taxes, in some form, exist in at least 49 states. The purpose, as set forth in many cases and in the literature discussing them, is to put pressure on the several states to impose the same tax burden on all insurance companies, foreign or domestic, and thereby encourage the doing of interstate business.

Prior to 1964, the California Constitution provided for a retaliatory tax involving two elements: a tax on *discriminatory* taxes, i.e., taxation of a California insurer doing business in the home state of a foreign insurer, at a higher rate than that state imposed on its own insurers; and (2) a tax on *comparative* taxes such as the one herein involved. At that time, the statutory law imposed a retaliatory tax only on the comparative theory. In 1964, the California Constitution was amended to delete the provision relating to discriminatory taxes and thereafter both the California Constitution and the statute used parallel language imposing only the comparative tax.

In cases involving the applicability of the pre-1964 tax scheme, the courts held that, because the California Constitution required that a tax imposed by the home state of a foreign insurer involve both the discriminatory and the comparative feature, the statutory attempt to impose a retaliatory tax in situations involving only the comparative tax was invalid as being beyond the California constitutionally granted power of taxation.[2] We agree with plaintiff that the *holding* of those cases was limited to that issue, although there is language, relied on here by defendant, that can be read as sustaining the constitutionality

---

[1]As used herein, and in the literature on the subject, a "foreign" insurance company is one incorporated and having its principal office in a state other than the state imposing the taxes; a "domestic" insurance company is one incorporated in, and having its principal office, in the state imposing the taxes.

[2]*Franklin Life Ins. Co.* v. *State Bd. of Equalization* (1965) 63 Cal.2d 222 [45 Cal.Rptr. 869, 404 P.2d 477]; *Atlantic Ins. Co.* v. *State Bd. of Equalization* (1967) 255 Cal.App.2d 1 [62 Cal.Rptr. 784].

of the present comparative provisions. We turn then, to consider the issue herein involved with no binding California precedent, although the language relied on by defendant is, of course, entitled to our respect.

For many years, under the compulsion of *Paul* v. *Virginia* (1869) 75 U.S. (8 Wall.) 168 [19 L.Ed. 357], which had held that the business of insurance was not "commerce" within the meaning of the commerce clause of the federal Constitution, the states had imposed a variety of retaliatory taxes. In 1944, in *United States* v. *South-Eastern Underwriters Assn.* (1944) 322 U.S. 533 [88 L.Ed. 1440, 64 S.Ct. 1162], the Supreme Court overruled *Paul* v. *Virginia* and held that the business of insurance was within the commerce clause. Shortly thereafter, Congress enacted the so-called McCarran Act (59 Stats. 33, 15 U.S.C. §§ 1011-1015). That statute provided that "the business of insurance . . .shall be subject to the law of the several States which relate to the regulation or taxation of such business." In *Prudential Ins. Co.* v. *Benjamin* (1946) 328 U.S. 408 [90 L.Ed. 1342, 66 S.Ct. 1142, 164 A.L.R. 476], the Supreme Court construed that statute and concluded that Congress had "clearly put the full weight of its power behind existing and future state legislation to sustain it from any attack under the commerce clause to whatever extent this may be done with the force of that power behind it . . . ." (328 U.S. at p. 431 [90 L.Ed. at p. 1361].) ■ We conclude that that decision, and other cases following it,[3] compel us to reject plaintiff's contention that the statutes herein involved are unconstitutional as affecting interstate commerce.

## II

However, *Benjamin* also made it clear that the McCarran Act did not insulate state legislation from attack on grounds other than the commerce clause. In that connection, the Supreme Court said (at p. 430 [90 L.Ed. at p. 1360]): "Nor is it necessary to conclude that Congress, by enacting the McCarran Act, sought to validate every existing state regulation or tax. For in all that mass of [state] legislation must have lain some provisions which may have been subject to serious question on the score of other constitutional limitations in addition to commerce

[3]See, for example: *Prudential Ins. Co.* v. *Hobbs* (1946) 328 U.S. 822 [90 L.Ed. 1602, 66 S.Ct. 1360]. The tax involved in *Hobbs* has been held to be "substantially identical to Insurance Code section 685." (*Atlantic Ins. Co.* v. *State Board of Equalization* (1967) 255 Cal.App.2d 1, 10 [62 Cal.Rptr. 784].)

clause objections arising in the dormancy of Congress' power. And we agree...that there can be no inference that Congress intended to circumvent constitutional limitations upon its own power."

■ Thus we turn to plaintiff's alternative contention, i.e., that the retaliatory taxes violate the due process and equal protection clauses of the Fourteenth Amendment.[4]

We note first that, after the cautionary statement above quoted, the Supreme Court turned to consideration of the contentions that the tax there before it did violate some other constitutional restriction. It said (at pp. 437-438 [90 L.Ed. at p. 1364]): "These arguments may be summarily disposed of. As for the due process contention, it was settled by a long line of authorities prior to the *South-Eastern* decision, that the ...provision of the Fourteenth Amendment, as well as that requiring equal protection of the laws, does not forbid the states to lay and collect such a [retaliatory] tax ...."

The equal protection contention has been fully considered and rejected by a previous decision in this state in *Atlantic Ins. Co.* v. *State Bd. of Equalization* (1967) 255 Cal.App.2d 1 [62 Cal.Rptr. 784]. Although that case involved the pre-1964 changes in the California Constitution, the decision dealt with both of the requirements of the provision as it then stood. After deciding that the Texas laws therein involved did discriminate against California insurers, the court discussed the issue of equal protection as related to the (second) comparative requirement. Relying in part on *Franklin Life Ins. Co.* v. *State Bd. of Equalization* (1965) 63 Cal.2d 222 [45 Cal.Rptr. 869, 404 P.2d 477], it was held that the comparative retaliatory tax did not violate the equal protection clause. Whether or not the court in *Atlantic* properly relied on *Franklin,* the decision was a square holding as to the equal protection issue, and not dictum, since, as we have said above, the pre-1964 California law required that *both* elements of the then constitutional provision be met before a retaliatory tax could be assessed. The Supreme Court denied hearing in *Atlantic.* Right or wrong, we feel impelled to follow it in the case before us. It follows that, like the commerce clause contention, the equal protection contention must also fail.

---

[4]Although the contention is stated as involving both provisions, the discussions in the briefs are limited to the equal protection contention. We discuss the problem in that light.

## III

The second major issue raised by this appeal relates to the calculation of the head office tax deduction.[5] That issue has, so far as we can discover, never been litigated in any earlier California case.

The board argues that the effect of increasing the home office exemption to plaintiff would merely increase, *pro tanto,* the retaliatory tax payable for that year. Since the amount of the retaliatory tax is the difference between the premium tax paid to California and the comparable tax payable in plaintiff's home state, that contention is correct. It follows that, even if plaintiff is correct in its attack on the constitutionality of the home office exemption, the amount that it paid was correct. Plaintiff's argument here seeks to avoid that result by treating the gross premium tax and the retaliatory tax as separate and arguing that, if it has overpaid the former and underpaid the latter, it is entitled to a refund on its timely claim for overpaid premium tax and the state is barred by section 12432 of the Revenue and Taxation Code from making a late assessment for underpaid retaliatory tax. This theory misses the reality of the California tax on insurers. The two provisions are but parts of a single taxation scheme. Unless plaintiff has, in the end, paid more than the scheme required, it is not entitled to any refund.

The judgment is reversed.

Files, P. J., and Alarcon, J., concurred.

A petition for a rehearing was denied November 28, 1979, and respondent's petition for a hearing by the Supreme Court was denied December 27, 1979.

---

[5]The entire home office deduction was repealed in 1976.