KAHN, Judge.
American Southern Insurance Company (American Southern) appeals from a final judgment in favor of the Department of Revenue (Department) involving the Department’s construction and application of section 624.5091(1), Florida Statutes (1991). Because the Department’s construction is a reasonable interpretation of the statutory language at issue and does not deny American Southern equal protection, we affirm.
I. Factual Background
American Southern, a property and casualty insurer organized under the laws of and domiciled in Georgia, is authorized to do business in Florida. In June 1990, the Department issued a notice of intent to audit American Southern for the taxable years 1985 through 1989. On June 12,1992, pursuant to the audit, the Department assessed a retaliatory tax of $1,349,604 under section 624.5091(1), Florida Statutes (1991).[1] This amount was subsequently reduced by credits and adjustments to $1,184,895. American Southern paid the amount it determined to *812 be due and denied liability for the remaining $866,788.
In December 1992, American Southern filed a complaint for declaratory and injunc-tive relief in circuit court, contesting the remaining assessment of $866,788 in retaliatory tax. American Southern challenged the assessment as contrary to the intent and purpose of section 624.5091 and, in the alternative, asserted that the statute, as applied, violated equal protection rights under the Florida and federal constitutions.
Specifically, American Southern challenged the Department’s calculation of the tax based on its construction of the term “similar insurer” contained in section 624.5091(1). American Southern asserted that because it received a rate abatement of its gross premium tax under section 33-8-5 of the Georgia Code, based on its investments in Georgia property, the Department should have used that rate in calculating the retaliatory tax instead of the pre-abatement rate. Under the Georgia statute, if an insurer invests at least 75% of its nonfederal assets in Georgia property, Georgia reduces the amount of gross premium tax the insurer owes from 4.75% to 3%. See § 33-8-5, Ga.Code Ann. The Florida rate is effectively 1.75%. See § 624.509(l)(a), Fla.Stat. (1991). In assessing the retaliatory tax, however, the Department determined that even though American Southern had enough Georgia assets to qualify for the Georgia rate abatement, it did not have a comparable amount of assets invested in Florida; therefore, a similar insurer to American Southern would be a Florida insurer operating in Georgia without enough Georgia assets to qualify for the rate abatement.
After both parties filed motions for summary judgment, the circuit court, on January 5, 1994, verbally announced its decision to grant summary judgment in favor of American Southern. On April 6, 1994, the circuit court entered a final judgment granting American Southern’s motion for summary judgment and declining to reach the constitutional issues. On April 12, 1994, the Florida Legislature passed a bill amending section 624.5091 to include a definition of “similar insurer” at subsection (4).[2]
The Department then filed a motion for rehearing asserting that the Legislature had passed clarifying statutory language supporting the Department’s position. American Southern also filed a motion for rehearing, asserting that the amendment “may, if valid, affect the summary judgment in this case” and requesting leave to serve a supplemental complaint. The circuit court granted both motions.
American Southern subsequently filed two amended complaints as well as a motion for summary judgment on rehearing. The Department also filed a motion for summary judgment on rehearing. The circuit court denied both motions and, after a bench trial on the disputed factual issues, entered final judgment in favor of the Department. American Southern has appealed, asserting that the Department’s construction and application of section 624.5091(1) is erroneous as a matter of law.
II. Department’s Construction Constitutes a Valid Interpretation and Application of Statute
The retaliatory tax statute, section 624.5091(1), Florida Statutes (1991), provides in pertinent part:
When by or pursuant to the laws of any other state or foreign country any taxes, licenses, and other fees, in the aggregate, ... are or would be imposed upon Florida insurers ... which are in excess of such taxes, licenses, and other fees, in the aggregate, ... directly imposed upon similar insurers ... of such other state or country under the statutes of this state, so long as such laws of such other state or country continue in force or are so applied, the same taxes, licenses, and other fees, in the *813 aggregate, ... shall be imposed by the Department of Revenue upon the insurers ... of such other state or country doing business or seeking to do business in this state.
The statute thus imposes a retaliatory tax on a foreign insurer doing business in Florida when the foreign insurer’s state of domicile imposes higher taxes on a similar Florida insurer doing business in that state than Florida would impose on a similar insurer of that state doing business in Florida.
The parties agree that the controversy in this case concerns the computation of the retaliatory tax based on the construction of the term “similar insurer” as used in the statute. During the audit period, as explained above, American Southern paid a reduced tax in Georgia because it qualified for a rate abatement of its gross direct premiums tax under section 33-8-5 of the Georgia Code. The Georgia statute allows such abatement if an insurer invests a certain percentage of its assets in Georgia property. See § 33-8-5, Ga.Code Ann. American Southern asserts that because Georgia allows any insurer, regardless of its state of domicile, to take advantage of the rate abatement, provided it has invested the requisite percentage of its assets in Georgia property, the Department should have taken into account the abatement American Southern received when it computed the tax a similar Florida insurer would pay in Georgia based on business activities identical to American Southern’s in Florida. The Department maintains, however, that because American Southern had enough Georgia assets to qualify for the Georgia rate abatement but did not have a comparable amount of assets invested in Florida, it properly considered, as a similar insurer to American Southern, a Florida insurer operating in Georgia without enough Georgia assets to qualify for the rate abatement.
As the circuit court explained, the Department calculates retaliatory tax in the following manner:
Both prior and subsequent to the 1994 Legislative revision, the Department calculated the retaliatory tax by comparing the taxes paid by a foreign insurer in Florida with the taxes that would be paid on identical business activities in the foreign insurer’s state of domicile. This calculation was derived by reviewing the taxes paid on the foreign insurer’s business in Florida, and then filling out the foreign state’s tax returns with identical business activity information, and then comparing the results.
This explanation is supported by the record. The Department’s method of calculation, i.e., using the foreign state’s tax returns, is not unreasonable or clearly erroneous as it does compare the tax imposed on a foreign insurer in Florida with the tax imposed by the foreign insurer’s state of domicile on a Florida insurer with the same amount of business activity. Indeed, the circuit court noted that the Department had reported no previous compliance problems or disputes with this type of calculation method.[3]
Further, the Department’s interpretation of “similar insurer” is consistent with decisions from other states concerning a Texas statute substantially similar to the Georgia statute involved in this case. See Atlantic Ins. Co. v. State Bd. of Equalization, 62 Cal.Rptr. 784, 255 Cal.App.2d 1 (1967), appeal dismissed, cert. denied, 390 U.S. 529, 88 S.Ct. 1208, 20 L.Ed.2d 86 (1968); Republic Ins. Co. v. Commissioner of Taxation, 212 Minn. 325, 138 N.W.2d 776 (1965); Employers Casualty Co. v. Hobbs, 152 Kan. 815, 107 P.2d 715 (1940). See also Republic Ins. Co. v. Oakley, 637 S.W.2d 448, 449-50 (Tenn.1982) (Where both Tennessee and Texas reduced tax liability if a taxpayer insurance company invested a certain portion of its assets in property of the taxing state, the Tennessee Supreme Court agreed with the Tennessee Insurance Commissioner’s deci *814 sion that “credits allowable to insurance company taxpayers are not properly to be considered and that a determination whether or not retaliatory taxes are called for is to be based solely upon a comparison of the basic tax rate of the two states in question.”).
Therefore, in light of the purpose of the statute, the Department’s construction of the term “similar insurer” is not unreasonable or clearly erroneous. See Legal Envtl. Assistance Found., Inc. v. Board of County Comm’rs, 642 So.2d 1081, 1083-84 (Fla.1994) (“When an agency’s construction amounts to an unreasonable interpretation, or is clearly erroneous, it cannot stand.”); Department of Envtl. Reg. v. Goldring, 477 So.2d 532, 534 (Fla.1985) (“Courts should accord great deference to administrative interpretations of statutes which the administrative agency is required to enforce.”); Pan Am. World Airways, Inc. v. Florida Public Serv. Comm’n, 427 So.2d 716, 719 (Fla.1983) (“We have long recognized that the administrative construction of a statute by an agency or body responsible for the statute’s administration is entitled to great weight and should not be overturned unless clearly erroneous.”). As the trial court explained, the Department’s interpretation simply fails to reward American Southern for investing in Georgia property:
The basic requirement of the retaliatory tax statute is to create a level playing field by discouraging excessive taxes or other burdens. § 624.5091(1), Florida Statutes. [American Southern] alleges that the Department’s interpretation of the retaliatory tax “exacts a discriminatorily higher tax of [American Southern] purely because of [American Southern’s] residence in Georgia.” Contrary to [American Southern’s] assertions, the Department’s calculation of the tax merely fails to reward American Southern for investing in Georgia. [American Southern] has to pay retaliatory tax because Georgia imposes a higher tax burden on insurers than Florida. This basic comparison of taxes with identical business activities under Georgia and Florida law is used to calculate the retaliatory tax.
III. Department’s Construction of “Similar Insurer” Does Not Violate Equal Protection
In 1945, Congress enacted the McCarran-Ferguson Act “which expressly exempted the business of insurance from the restraints of the dormant Commerce Clause, thereby restoring the states’ ... power to impose taxing and regulatory requirements on the business of insurance.” Gallagher v. Motors Ins. Corp., 605 So.2d 62, 66 (Fla.1992) (footnote omitted), cert. dismissed, 506 U.S. 1074, 113 S.Ct. 1036, 122 L.Ed.2d 179 (1993); see 15 U.S.C. §§ 1011-15 (1982). Nevertheless, under the Equal Protection Clause, “a state may not impose ‘more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between the foreign and domestic corporations bears a rational relation to a legitimate state purpose.’ ” Motors, 605 So.2d at 67 (quoting Western & S. Life Ins. Co. v. State Bd. of Equalization of Cal., 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981)).
The Florida Supreme Court has upheld the retaliatory tax statute against an equal protection challenge. Motors, 605 So.2d at 70-71. In doing so, the supreme court indicated that Florida’s retaliatory tax statute is “similar in structure” to the statute upheld against an equal protection challenge in Western .& Southern. Id. at 70. The Motors court further explained that the Legislature enacted the Florida statute with the well-recognized purpose of a retaliatory tax in mind:
[Western & Southern] also made clear that retaliatory taxes, which “have been a common feature of insurance taxation for over a century,” are rationally related to* the states’ legitimate interest in promoting “the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes.” Because it is at least fairly debatable that the Florida [Legislature enacted [the retaliatory tax statute] with this well recognized purpose in mind, the Equal Protection challenge was also properly rejected [by the trial court].
Id. at 71.
The Department’s interpretation of similar insurer in this case is a reasonable *815 means to advance the legitimate purpose of Florida’s retaliatory tax. Because the Department’s interpretation and application of the statute is reasonable and comports with the purpose of the tax, it does not violate the Equal Protection Clause. Appellant’s argument to the contrary fails to recognize that every retaliatory tax, regardless of amount, discriminates against foreign insurers because Florida insurers do not pay such tax to the State of Florida.
The Department’s construction is permissible because it taxes only those foreign insurers whose home states impose higher taxes on Florida insurers than Florida imposes on the foreign insurers. See Western & Southern, 451 U.S. at 670 n. 23, 101 S.Ct. at 2084 n. 23 (“The retaliatory tax is not imposed on foreign corporations qua foreign corporations, as would be expected were the purpose of the tax to raise revenue from noncitizens; rather, it is imposed on corporations whose home States impose more onerous burdens on [the taxing state’s] insurers than [the taxing state] otherwise would impose on those corporations.”). Because the Department’s construction does not burden all foreign corporations seeking to do business in Florida, no matter what they or their states do, it does not violate the Equal Protection Clause. See Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 878, 105 S.Ct. 1676, 1681, 84 L.Ed.2d 751 (1985) (“Unlike the retaliatory tax involved in Western & Southern, which only burdens residents of a State that imposes its own discriminatory tax on outsiders, the domestic preference tax gives the ‘home team’ an advantage by burdening all foreign corporations seeking to do business within the State, no matter what they or their States do.”).
IV. Conclusion
The dispute in this case merely concerns how much retaliatory tax American Southern owes to the State of Florida. As the trial court explained, because of the nature of the Georgia provision, the construction urged by American Southern results in Georgia investors obtaining lower tax rates in both Georgia and Florida:
[American Southern] alleges that the Department’s calculation does not limit the operation of the statute to leveling tax burdens which would actually be imposed on Florida insurers similarly situated to American Southern under Georgia law. On the .contrary, the Department of Revenue does exactly that. The rate abatement law in Georgia functionally allows Georgia investors a lower tax burden than other insurers. Under [American Southern’s] calculations, it would benefit in both Florida and Georgia by holding substantial assets in Georgia. [American Southern’s] calculation would undermine the legislative and judicially approved intent of “promoting interstate business by deterring other states from enacting discriminatory or excessive taxes.” In fact, [American Southern’s] method would encourage discriminatory taxation by other states, because the foreign domiciled insurer would receive essentially “double” credit for the same discriminatory provision.
(citations omitted). The trial court’s reasoning is consistent with the decisions from other states, referenced above, concerning a Texas statute substantially similar to the Georgia statute involved in this case. See Atlantic Ins. Co., 62 Cal.Rptr. at 789-93, 255 Cal.App.2d 1; Republic Ins. Co., 138 N.W.2d at 780-82; Employers Casualty Co., 107 P.2d at 717-18. In each of those decisions, the court rejected the argument that, for purposes of computing the retaliatory tax, a similar insurer to a Texas insurer is an insurer from the taxing state, i.e., California, Minnesota, or Kansas, with the same amount of Texas investments as the Texas insurer. Atlantic Ins. Co., 62 Cal.Rptr. at 790, 255 Cal.App.2d 1; Republic Ins., 138 N.W.2d at 781-82; Employers Casualty, 107 P.2d at 717-18.[4]
*816 We do not reach American Southern’s contention that the definition of similar insurer in section 624.5091(4), Florida Statutes (Supp.1994), may not be applied retroactively to the years in question. For the reasons set out in part II of this opinion, the Department’s construction of section 624.5091(1) is valid irrespective of the 1994 amendment.
AFFIRMED.
BARFIELD and ALLEN, JJ., concur.

. Section 624.5091(1), Florida Statutes (1991), provides in pertinent part:
When by or pursuant to the laws of any other state or foreign country any taxes, licenses, and other fees, in the aggregate, ... are or would be imposed upon Florida fhsurers ... which are in excess of such taxes, licenses, and other fees, in the aggregate, ... directly imposed upon similar insurers ... of such other state or country under the statutes of this state, so long as such laws of such other state or country continue in force or are so applied, the same taxes, licenses, and other fees, in the aggregate, ... shall be imposed by the Department of Revenue upon the insurers ... of such other state or country doing business or seeking to do business in this state.

. Section 624.5091(4), Florida Statutes (Supp. 1994), provides:
For the purposes of this section, a "similar insurer" is an insurer with identical premiums, personnel, and property to that of the alien or foreign insurer's Florida premiums, personnel, and property. The similar insurer’s premiums, personnel, and property shall be used to calculate any taxes, licenses, other fees, in the aggregate, ... that are or would be imposed under Florida law and under the law of the foreign or alien insurer’s state of domicile.

. As noted in the Department’s brief, for the tax years at issue, American Southern calculated and paid its retaliatory tax according to the method 1 advanced by the Department. As a result of the audit, however, American Southern owed additional insurance-related taxes and, rather than paying those additional taxes, American Southern offset that amount against the amount of retaliatory tax it had allegedly overpaid. Accordingly, if American Southern prevailed in this action, it would receive a refund of taxes paid back to 1985.

. Contrary to appellant’s assertions. Western & Southern and Ward do not appear to change the principles or reasoning contained in Atlantic Insurance, Republic Insurance, or Employers Casualty even though the latter cases were decided earlier; rather, Western & Southern and Ward appear to comport with the principles and reasoning set forth in the earlier decisions. Indeed, the Atlantic Insurance case is cited in Western & Southern and no disapproval thereof is indicated. See Western & S., 451 U.S. at 670, 673, 101 S.Ct. at 2084, 2085.