455 So.2d 311 (1984)
EASTERN AIR LINES, INC., Appellant,
v.
DEPARTMENT OF REVENUE, Appellee.
No. 63949.
Supreme Court of Florida.
June 14, 1984.
Rehearing Denied September 12, 1984.
*313 Joseph F. Jennings of Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, Miami, for appellant.
Jim Smith, Atty. Gen., and Joseph C. Mellichamp, III, Asst. Atty. Gen., and Larry Levy, General Counsel and Jane Mostoller, Asst. General Counsel, Dept. of Revenue, Tallahassee, for appellee.
ADKINS, Justice.
The case is before us on an order from the First District Court of Appeal certifying the issues in the case to be of great public importance. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const.
This case arose with the filing of a complaint by Eastern Air Lines in the circuit court of Leon county seeking declaratory and injunctive relief from the enforcement of provisions of chapter 83-3, Laws of Florida, on the grounds that the law was unconstitutional. Specifically, Eastern alleged that the law violated the equal protection and due process clauses of the Florida and United States Constitutions, was an unconstitutional delegation of legislative authority, and violated the commerce clause of the United States Constitution. By stipulation, the parties agreed to a procedure whereby Eastern was allowed to self-accrue the sales tax imposed under chapter 83-3, which became effective on April 1, 1983, during the pendency of the proceedings subject to certain conditions. The trial judge entered his final judgment in this case on May 27, 1983, incorporating the order he had entered in a similar action filed by Delta Airlines and upholding the constitutionality of chapter 83-3. On June 24, 1983, Eastern filed its notice of appeal with the First District Court of Appeal. On July 12, 1983, that court issued its order certifying the case for immediate resolution by this Court.
Chapter 83-3 was enacted during a special session of the Florida legislature which was called for the express purpose of addressing road transportation and public transit needs in the state. The law revises the tax structure of chapters 212 and 220 of the Florida Statutes. The new law eliminates one-half (4 cents) of the excise tax imposed by former chapter 206, Florida Statutes (1981), on fuel purchased for road transportation use and imposes a five percent sales tax on this fuel through the new Part II of former chapter 212, chapter 83-3, section 6. That section bases the five percent sales tax on a predetermined price for fuel of $1.148 per gallon. The new sales tax is imposed on all aviation jet fuel purchased by interstate air common carriers, but is not imposed on railroads and vessels due to the proration provision which applies to railroads and vessels allowing taxation based on cost and only on the carrier's intrastate mileage. Ch. 83-3, § 5 (amends § 212.08(4), Fla. Stat. (Supp. 1982)). Section 5 of the law provides:
(4) EXEMPTIONS, ITEMS BEARING OTHER EXCISE TAXES, ETC.  Also exempt are water (not exempting mineral water or carbonated water), and; all fuels *314 used by a public or private utility, including any municipal corporation or rural electric cooperative association, in the generation of electric power or energy for sale. Fuel other than motor fuel and special fuel is taxable as provided in this part, except that fuel expressly exempt herein. Motor fuels and special fuels are taxable as provided in part II, except that those used by vehicles, other than aircraft, which are licensed as common carriers by the Interstate Commerce Commission to transport persons or property in interstate or foreign commerce and vessels used to transport persons or property in interstate or foreign commerce are taxable only to the extent provided herein.
The first issue which we will address is Eastern's contention that the proration provisions, which do not apply to airlines, violate concepts of equal protection by not treating all common carriers alike. Eastern asserts that all interstate carriers, whether they be airlines, railroads, trucks or vessels, are similarly situated for fuel tax purposes. The circuit court found that Eastern did not sustain its burden of demonstrating that the classification is hostile and oppressive and held that there "is no invidious discrimination by the creation of an arbitrary classification." The court's order states: "Classifying airlines differently from vessels and railroads for fuel tax purposes is not arbitrary. Airlines enjoy advantages and must tolerate some disadvantages due to their distinctive nature." The court cited the example of the airlines being exempt from ad valorem taxes on the lease of property from the county or other governmental unit pursuant to chapter 80-368, Laws of Florida, while vessels and railroads are not. The court also noted that proration of mileage for aircraft has proven difficult in the past because of flight patterns over the Gulf of Mexico and the Atlantic Ocean to avoid the accumulation of intrastate mileage.
When the state legislature, acting within the scope of its authority, undertakes to exert the taxing power, every presumption in favor of the validity of its action is indulged. Only clear and demonstrated usurpation of power will authorize judicial interference with legislative action. Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954). In the field of taxation particularly, the legislature possesses great freedom in classification. The burden is on the one attacking the legislative enactment to negate every conceivable basis which might support it. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940); Just Valuation & Taxation League, Inc. v. Simpson, 209 So.2d 229, 323 (Fla. 1968). The state must, of course, proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. Department of Revenue v. AMREP Corp., 358 So.2d 1343, 1349 (Fla. 1978). A statute that discriminates in favor of a certain class is not arbitrary if the discrimination is founded upon a reasonable distinction or difference in state policy. Allied Stores v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 321 (1959).
We agree with the circuit court's conclusion that Eastern has not met its burden in attacking the classification made here. They have failed to demonstrate that a hostile and oppressive discrimination has been made. There are many obvious distinctions between public road and highway transportation of persons and property and air transportation upon which the classification at issue could rationally be based. The modes of transportation are inherently and essentially different. The classification drawn does not violate concepts of equal protection.
Eastern also argues that the statute, by adopting an initially established fuel price of $1.148 per gallon upon which to base the tax rate, violates concepts of equal protection and unconstitutionally restricts the rights of individuals to contract. The provision being challenged reads as follows:
§ 212.70 Tax imposed on sale of motor fuel and special fuel; tax upon ultimate *315 consumer; determination by department; notification. 
(3) Prior to June 1 of each year, the department shall determine the appropriate sales tax applicable to the retail price per gallon of motor fuel and special fuel as follows:
(a) The department shall determine the appropriate total motor fuel and special fuel retail price, including any federal, state and local excise taxes on such fuel, for the forthcoming 12-month period beginning June 1, by adjusting the initially established price by the percentage change in the average monthly gasoline price component of the Consumer Price Index, issued by the United States Department of Labor, for the most recent 12-month period ending March 31, compared to said average for the 12-month period ending March 31, 1984. However, the adjustment provided herein shall first be made for the forthcoming 12-month period beginning June 1, 1985.
(b) The tax per gallon shall be computed as 5 percent of said total retail price, rounded to the nearest one-tenth of one cent.
(c) The initially established price is $1.148 per gallon.
Eastern asserts that the price set is not related to the actual price of aviation fuel and, therefore, is arbitrary and unreasonable. We do not agree. The tax is levied on first withdrawal of the fuel from the storage tanks and is imposed on all consumers equally regardless of the nature of transport. We find no merit in Eastern's argument that the predetermined price structure invidiously discriminates against airlines.
Eastern also contends that section 6 of the law constitutes an improper delegation of legislative power by relating the price adjustment for future periods to the percentage change in the average monthly gasoline price component of the Consumer Price Index issued by the United States Department of Labor. The Consumer Price Index referred to in the law is authorized by 29 U.S.C. §§ 2, 2a and 2b (1976). Under these code provisions, the Secretary of Labor has broad powers to collect, collate and report statistics, and, to that end, has the power to use bureaus provided for the department and is authorized to call upon other departments of the federal government for data and the results obtained by them. More importantly, the Secretary of Labor may "collate, arrange, and publish such statistical information so obtained in the same manner as to him may seem wise." 29 U.S.C. § 2. The Consumer Price Index is widely used by the federal government to determine such things as cost of living increases in social security, retirement benefits for the military, and other appropriations such as child care payments.
The circuit court in its final judgment determined that the method of appropriation in chapter 83-3 is equivalent to the method which allowed the Department of Education to appropriate state funds to a state agency based on the Florida Price Level Index and which was found to be constitutional in Gindl v. Department of Education, 396 So.2d 1105 (Fla. 1979). Eastern argues that the instant case should be distinguished from Gindl because here the Department of Revenue is delegated to determine the price upon which the tax will be based by using a federal agency's index to be adopted in the future and over which no Florida agency has any control. Eastern argues that since the department, in arriving at the tax applicable to the price, must, of necessity, rely on an administrative act of the United States Department of Labor which will first take place on March 1, 1984, the legislature has shifted its constitutional duties to that federal agency contrary to the established rule of this state, citing as authority this Court's decision in State v. Welch, 279 So.2d 11 (Fla. 1973).
In State v. Welch, this Court considered the constitutionality of a portion of the former Florida Drug Abuse Law, chapter 404, Florida Statutes (Supp. 1972), which purported to prohibit certain acts by reference. Specifically, the law declared that it *316 was the intent of the legislature to include under that chapter "all drugs controlled by the drug abuse laws of the United States, now or in the future," in addition to those specified under Florida law. § 404.515, Fla. Stat. (Supp. 1972). In Welch this Court looked to the rule of law announced in Freimuth v. State, 272 So.2d 473 (Fla. 1972). There, the Court said that the legislature may adopt provisions of federal statutes and administrative rules made by a federal administrative body that are in existence and in effect at the time the legislature acts, but it would be an unconstitutional delegation of legislative power for the legislature to adopt in advance any federal act or the ruling of any federal administrative body that Congress or an administrative body might see fit to adopt in the future. 272 So.2d at 476. Accordingly, this Court held the statute unconstitutional for attempting to incorporate by reference future legislative and/or administrative actions of jurisdictions outside Florida. Id.
We believe that Eastern's reliance on the aforementioned language is misplaced. The statute under attack merely provides that an adjustment be made to the fuel price which is based on the percentage change in the average monthly gasoline price component of the Consumer Price Index. Here, the legislature is merely setting forth the manner in which the department is to determine the appropriate total motor fuel and special fuel retail price. The department is directed with precision how to make such a determination. We think the language of Welch and Freimuth should be interpreted to apply to statutes which incorporate federal statutes or administrative rules which substantively change the law, and not to a statute which incorporates a federal index to provide aid in making a ministerial determination.
Furthermore, we do not agree with Eastern's contention that the statute is also constitutionally infirm because the Department of Revenue will utilize a consumer price index which is to be determined after the effective date of the act. In Gindl we upheld a statutory provision which required a computation based on the most recent publication of the Florida Price Level Index prepared by the Department of Administration. The statute was to take effect July 1, 1976. The Department of Education intended to base the distribution on a survey which would be started in October or November of 1976 and completed during the early part of 1977. In other words, the effect of the statute was to reach forward and allow distribution to be calculated on the most recent publication of the Florida Price Level Index, an index which was not in existence when the law became effective. We agree with the circuit court's determination that the method of appropriation in chapter 83-3 is equivalent to the method approved in Gindl.
The final issue which Eastern has raised is whether chapter 83-3 unconstitutionally discriminates against interstate commerce since its tax credit provisions provide a direct commercial advantage to local agriculture and commercial fishing to the detriment of similar interstate activities. The relevant section of the law provides:
§ 212.92 Refunds. 
(e) Refund to farmers and fishermen. 
1. [A]gricultural purposes means motor fuel or special fuel used in any tractor, vehicle, or other farm equipment which is used exclusively on a farm or for processing farm products on the farm and no part of which is used in any vehicle or equipment driven or operated upon the public highways of this state. This restriction shall not apply to the movement of farm vehicles or farm equipment between farms.
2. For the purposes of this paragraph, "commercial fishing purposes" shall be construed to mean motor fuel or special fuel used in the operation of boats, vessels, and equipment used exclusively for the taking of fish, crayfish, oysters, shrimp, and sponges from the salt and fresh waters under the jurisdiction of the state for resale to the public but shall in no way be construed to include fuel used for sports or pleasure fishing, no part of which is used in any vehicle or equipment driven or operated upon the highways of this state.

*317 3. Any person who uses any motor fuel or special fuel for agricultural purposes or commercial fishing purposes on which the tax imposed by this part has been paid shall be entitled to a refund of said tax.
The Department of Revenue questions Eastern's standing to challenge chapter 83-3's full refund provisions, section 212.92(1)(e), 2. & 3., since Eastern is "neither in the fishing or farming business and ... Eastern does not contend that farmers and/or fishermen are in direct or indirect competition with their airline enterprise." Eastern does not compete with fishing or agriculture. We agree that Eastern does not have standing to raise the unconstitutionality of these full refund provisions. In State ex rel. Clarkson v. Philips, 70 Fla. 340, 70 So. 367 (1915), this Court held that the constitutionality of a provision of a statute cannot be tested by a party whose rights or duties are not affected by it, unless the provision is of such a nature that it renders invalid a provision of the statute that does affect the party's rights or duties.
It is a fundamental principle that a statute, if constitutional in one part and unconstitutional in another part, may remain valid except for the unconstitutional portion. However, this is dependent upon the unconstitutional provision being severable from the remainder of the statute. The severability of a statutory provision is determined by its relation to the overall legislative intent of the statute of which it is a part, and whether the statute, less the invalid provisions, can still accomplish this intent. Cramp v. Board of Public Instruction, 137 So.2d 828 (Fla. 1962).
Additionally, if the valid portion of the law would be rendered incomplete, or if severance would cause results unanticipated by the legislature, there can be no severance of the invalid parts; the entire law must be declared unconstitutional. Kass v. Lewin, 104 So.2d 572 (Fla. 1958). This Court succinctly summarized the general rules regarding severability in Presbyterian Homes of Synod v. Wood, 297 So.2d 556 (Fla. 1974), wherein the Court stated:
An unconstitutional portion of a general law may be deleted and the remainder allowed to stand if the unconstitutional provision can be logically separated from the remaining valid provisions, that is, if the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void; and the good and bad features are not inseparable and the Legislature would have passed one without the other; and an act complete in itself remains after the invalid provisions are stricken.
Id. at 559.
We believe that the legislature's intent could still be accomplished if the full refund provisions relating to local commercial fishing and agriculture were to be eliminated and the remainder of the statute left intact. Therefore, we cannot say that these provisions, were we to declare them unconstitutional, are of such a nature that they would render invalid the portion of the statute that does affect Eastern's rights. Eastern has no standing to raise this issue.
Accordingly, we affirm the order of the circuit court.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD and SHAW, JJ., concur.