PENN MUTUAL LIFE INSURANCE COMPANY v DEPARTMENT
OF LICENSING AND REGULATION

Docket No. 90490. Submitted April 16, 1987, at Lansing. Decided
August 3, 1987. Leave to appeal denied, 429 Mich —.

Penn Mutual Life Insurance Company and other foreign insurers
brought separate actions in the Court of Claims to recover
premium taxes paid under the Insurance Code, alleging that
the tax violated the equal protection clause. The Court of
Claims consolidated the actions. Defendant moved for summary
disposition on the ground of sovereign immunity. The court,
Thomas L. Brown, J., denied the motion. Defendant appealed
by leave granted. The Court of Appeals directed the parties to
brief the issues of sovereign immunity and the constitutionality
of the premium tax provision of the Insurance Code and *held:*

1. The premium tax imposed on the business written or
renewed by foreign insurers in this state violates the equal
protection clause of the United States Constitution.

2. The holding should be applied prospectively only.

Reversed.

1. CONSTITUTIONAL LAW — PRESUMPTIONS — TAXATION.

Legislative enactments, as a general rule, are clothed with a
presumption of constitutionality; this presumption is especially
strong where tax legislation is concerned.

2. TAXATION — CONSTITUTIONAL LAW — EQUAL PROTECTION — PRE-
SUMPTIONS.

Tax legislation, being clothed with a presumption of constitution-
ality, will be held to be violative of the constitutional right to
equal protection only where it is shown that the classification
scheme bears no rational relation to any conceivable legislative
purpose which might support it.

REFERENCES
Am Jur 2d, State and Local Taxation §§ 110, 171, 183, 186, 300-302,
470, 471.
Supreme Court's application of Fourteenth Amendment's equal
protection clause to foreign corporations. 49 L Ed 2d 1296.
Construction, application, and operation of state's "retaliatory"
statutes imposing special taxes or fees on foreign insurers doing
business within the state. 30 ALR4th 873.

3. TAXATION — PREMIUM TAX — INSURANCE — EQUAL PROTECTION —
   INSURANCE CODE.
   The premium tax imposed on the business written or renewed by
   foreign insurers in this state violates the equal protection
   clause of the United States Constitution (US Const, Am XIV;
   MCL 500.440, 500.441; MSA 24.1440, 24.1441).

*Miller, Canfield, Paddock & Stone* (by *Carl H. von Ende, Kevin J. Lesinski,* and *Lynn Stevens Naoum*), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *William A. Chenoweth,* Assistant Attorneys General, for defendant.

Before: CYNAR, P.J., and SHEPHERD and B. A. JASPER,* JJ.

CYNAR, P.J. This case involves the consolidated claims of foreign insurance companies doing business in Michigan to recover premium taxes paid under § 440 of the Insurance Code of 1956, MCL 500.100 *et seq.*; MSA 24.1100 *et seq.* Defendant appeals by leave granted from a Court of Claims denial of its motion for summary disposition under MCR 2.116(C)(4) and (8), premised on sovereign immunity. This Court directed the parties to brief the following issues: (1) sovereign immunity and (2) the constitutionality of § 440 of the Insurance Code. The Supreme Court denied defendant's bypass application for leave to appeal.

Between February 28, 1983, and March 29, 1985, fifteen foreign insurers (plaintiffs) filed fifty-nine complaints in the Court of Claims to recover premium tax payments totaling about $147,000,000 for various tax years between 1965 and 1982.

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

Premium taxes are imposed upon the business written or renewed by the foreign insurer in this state. Payment of the tax is a condition precedent to the privilege of doing business here. Depending on the type of insurance sold, the tax amount is two percent or three percent of gross premium collections. MCL 500.440; MSA 24.1440; MCL 500.441; MSA 24.1441.

By comparison, domestic insurers presently pay a single business tax pursuant to the Single Business Tax Act, MCL 208.1 et seq.; MSA 7.558(1) et seq. The vast majority of the tax years in dispute cover the periods subsequent to the enactment of the SBTA, which became effective on January 1, 1976. The single business tax is imposed on the "privilege of doing business and not upon income." MCL 208.31(4); MSA 7.558(31)(4). The tax base of a domestic insurer is the sum of business income and certain adjustments contained in § 9 of the SBTA. MCL 208.22; MSA 7.558(22) and MCL 208.9; MSA 7.558(9). The tax rate is 2.35 percent of the adjusted tax base, which is allocated or apportioned to this state. MCL 208.31(1); MSA 7.558(31)(1).

Plaintiffs alleged in their separate complaints that the effect of these two distinct tax systems was to impose a greater tax burden on foreign insurers. Relying on *Western & Southern Life Ins Co v State Bd of Equalization of California,* 451 US 648; 101 S Ct 2070; 68 L Ed 2d 514 (1981), plaintiffs asserted that the premium tax is unconstitutional because it violates the equal protection clause of the United States Constitution, Am XIV, and the Michigan Const 1963, art 1, § 2. Plaintiffs' requests to obtain premium tax refunds were denied by the Insurance Bureau in standard form letters.

Defendant's affirmative defenses to the com-

plaints included the following three defenses: (1) even if the premium tax was unconstitutional, any judicial decision involving the tax should be applied prospectively; (2) plaintiffs' claims are barred by the statute of limitations; and (3) even if the premium tax is invalid, any refunds should be reduced by the retaliatory tax imposed on foreign insurers, MCL 500.476; MSA 24.1476, or the amount of tax which plaintiffs would have been subject to had they been taxed as domestic insurers.

Plaintiffs' fifty-nine complaints were consolidated in separate Court of Claims orders, pursuant to the parties' stipulations. On October 8, 1985, defendant filed a motion for summary disposition under MCR 2.116, contending that (1) the Court of Claims lacked subject matter jurisdiction because the defendant had not waived sovereign immunity from suit and (2) the complaints failed to state a claim because defendant had not waived sovereign immunity from liability. In an opinion and order dated January 16, 1986, the Court of Claims found that it had jurisdiction and that plaintiffs had stated a claim by characterizing their claims as contractual in nature. Defendant's motion for summary disposition was denied. This Court granted defendant's application for leave to appeal. On May 28, 1986, the Court of Claims ordered that fifty-nine additional complaints filed by plaintiffs and other foreign insurers be consolidated, subject to the court's order staying the proceedings pending this appeal.

In October 1986, the Court of Claims ordered that three additional complaints be consolidated in this action, bringing the number of parties plaintiff and complaints to forty-two and 121, respectively. According to defendant's "first amended Exhibit A," filed November 19, 1986, with this

Court, forty-two plaintiffs have now filed 123 complaints, requesting premium tax refunds of $255,497,647.82, plus interest and attorney fees.

This Court sua sponte directed the parties to brief the constitutionality of the statutory premium tax. In its appellate brief the state concedes that, because of the premium tax imposed, those coming within the definition of a foreign insurer have a greater tax burden than those taxed under the SBTA. The issue, then, is whether the admittedly discriminatory tax treatment of foreign insurers violates equal protection.

The presumption of a statute's constitutionality is especially strong where tax legislation is concerned. *Kostyu v Dep't of Treasury,* 147 Mich App 89, 93; 382 NW2d 739 (1985). The party challenging the tax classification must negate every conceivable basis which might support it. *American Amusement Co, Inc v Dep't of Treasury,* 91 Mich App 573, 578; 283 NW2d 803 (1979), lv den 407 Mich 942 (1979), appeal dismissed for want of a substantial federal question 446 US 931; 100 S Ct 2145; 64 L Ed 2d 783 (1980). *American Amusement* sets forth the equal protection principles applicable to tax legislation. In that case, this Court stated:

> However, this [presumption] is not to say that the states are exempt from the requirements of the equal protection clause of the Fourteenth Amendment when enacting taxation legislation. As stated in *Allied Stores of Ohio, Inc v Bowers,* 358 US 522, 527-528; 79 S Ct 437; 3 L Ed 2d 480 (1959):
>
> "[T]here is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated

to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' . . . That [a] statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy." [*American Amusement Co, Inc, supra,* p 577.]

The standard of reasonableness under the rational basis test is whether any set of facts may reasonably be conceived to justify the legislative discrimination. *In re Contempt of Stone,* 154 Mich App 121, 128; 397 NW2d 244 (1986). The controlling principle with respect to tax legislation seems to be one of equal treatment for similarly situated taxpayers. Some rational basis for a disputed classification must be shown. *Armco Steel Corp v Dep't of Treasury,* 419 Mich 582, 591-592; 358 NW2d 839 (1984).

The premium tax applicable to foreign insurers has been described not as a "gross profits" tax, but rather as a tax on gross premiums. It is levied as a condition precedent to and in exchange for the privilege enjoyed by a foreign insurer engaging in insurance business. The tax relates directly to the exercise of that privilege in the taxing state. *Mutual Life Ins Co of New York v Ins Bureau,* 424 Mich 656, 662-664; 384 NW2d 25 (1986). In Michigan, different versions of the premium tax date back to 1869. See for example *People v American Central Ins Co,* 179 Mich 371; 146 NW 235 (1914).

By comparison, domestic insurers have been taxed under various taxing statutes. Under the Income Tax Act of 1967 (repealed by 1975 PA 233), domestic insurers were subject to a tax on income, as defined in the act, MCL 206.61 *et seq.*; MSA 7.557(161) *et seq.* Effective January 1, 1976, domestic insurers were taxed under the SBTA. The single

business tax is imposed on the privilege of doing business and not upon income. It is best understood as a value-added tax, although it is not a pure value-added tax. *Town & Country Dodge, Inc v Dep't of Treasury,* 420 Mich 226, 234; 362 NW2d 618 (1984). In conceding that a tax preference is given to domestic insurers, the state addressed only the SBTA.

The disputed classification scheme is the foreign/domestic distinction. A "domestic" insurer is defined as an insurer formed under the laws of this state. MCL 500.110(1); MSA 24.1110(1). A domestic insurer which does not comply with certain statutory requirements (i.e., maintaining a principal place of business in this state) is treated as a foreign insurer.

In their complaints, plaintiffs based their discrimination claims on *Western & Southern Life Ins Co v State Bd of Equalization of California, supra.* At issue in that case was a retaliatory tax imposed on foreign insurers. Under California's taxing scheme, a premium tax was imposed on both foreign and domestic insurers, thus bringing into question the constitutionality of imposing an additional "retaliatory" tax on foreign insurers. The retaliatory tax was characterized as being a privilege tax. Although the United States Supreme Court acknowledged that a prior case, *Lincoln National Life Ins Co v Read,* 325 US 673; 65 S Ct 1220; 89 L Ed 1861 (1945), held that a state may impose a tax on out-of-state corporations for the privilege of doing business in the state without being subject to an equal protection challenge, the Court concluded that *Lincoln National* was an anachronism. Based on cases prior and subsequent to *Lincoln National,* the Supreme Court considered it now established that the challenged discrimination between foreign and domestic corporations

must bear a rational relationship to a legitimate state purpose. *Western & Southern,* 667-668. The test is (1) does the legislation have a legitimate purpose and (2) was it reasonable for lawmakers to believe that use of the challenged classification would promote that purpose. *Western & Southern,* 668. The purpose of California's retaliatory tax was determined to be that of putting pressure on other states to impose a nondiscriminatory tax on insurers and to thereby promote interstate commerce, which in turn would promote California's domestic industry. The retaliatory tax was upheld despite the United States Supreme Court's conclusion that statistical data showed the retaliatory tax to be of questionable value. *Western & Southern,* 674.

In 1985, or two years after the first complaints were filed by plaintiffs, the United States Supreme Court entered another opinion dealing with the foreign/domestic insurer tax classification. *Metropolitan Life Ins Co v Ward,* 470 US 869; 105 S Ct 1676; 84 L Ed 2d 751 (1985). At issue in *Ward* was an Alabama taxing statute which imposed a substantially lower gross premium tax on domestic insurers (one percent) than on foreign insurers (three to four percent). The United States Supreme Court held that neither promoting domestic business within a state by discriminating against foreign insurers nor the encouragement of investments in state assets in a discriminatory manner were legitimate state purposes. *Ward,* 882-883. The controlling principle seemed to be that a state may not favor its own residents by taxing foreign corporations at a higher rate solely because of their residency. *Ward,* 878. The case was remanded for further proceedings, during which the state could advance some fifteen other alleged legitimate purposes for the discrimination. *Ward,* 876, n 5.

Based on *Ward,* the Supreme Court of North Dakota held that North Dakota's gross premium tax was unconstitutional. See *Metropolitan Life Ins Co v Comm'r of Dep't of Ins,* 373 NW2d 399 (ND, 1985). Under North Dakota's taxing scheme, foreign insurers paid a gross premium tax, while domestic insurers paid a corporate income tax. The court rejected all the purposes advanced by the state as not being legitimate when furthered by discrimination or, if legitimate, as not being rationally related to the taxing scheme.

In the instant case, the purpose advanced by the state was to establish a reliable source of insurance coverages within the state and to increase the availability of insurance in those areas where the public need is the greatest. According to the state, "but for" the availability of insurance from domestic insurers, many residents and businesses within this state would be involuntarily uninsured.

According to the state, statistical information from 1975 through 1984 shows (1) that there is a direct correlation between the degree of profits generated by a line of insurance and the willingness of the foreign insurance industry to provide insurance coverages for that line of insurance, (2) that foreign insurers will discontinue doing business in this state in a particular line of insurance if that line proves to be unprofitable, (3) that offering a tax exemption for a particular line of insurance will not induce foreign insurers to offer that insurance in this state if it is not profitable, and (4) domestic insurers fill the gap in insurance needs by providing coverage in less lucrative lines of insurance.

Plaintiffs contend that the actual purpose of the legislation was to (1) favor domestic companies and (2) raise revenue at the expense of foreign insurers. In respect to the test requiring it to negate

every conceivable basis which might support the taxing statute's constitutionality, plaintiffs argue that the purpose advanced by the state is illegitimate under *Ward* because the tax accomplishes its purpose, if at all, only by discriminating against nonresident competitors.

We hold that, unlike in *Ward,* the purpose advanced by the state is legitimate (i.e., making insurance coverages available to residents), but the means chosen are not rationally related to promoting that purpose. The classification scheme is based on residency. Although it is not required that close distinctions be drawn in making classifications, the foreign/domestic classification scheme made here affords no opportunity for a foreign insurer to share in the tax preference given to domestic insurers if it desires to offer insurance in the areas of greatest public need despite the lower profit potential. The classification scheme also permits a domestic insurer to obtain a tax preference over foreign insurers even if the line of insurance offered is in a more lucrative market. Thus the classification is both under and over inclusive and not rationally related to promoting insurers to offer insurance in the high loss ratio areas such as medical malpractice, farm owners multiple peril, liquor liability, municipal liability, and product liability.

If the state's purpose is broader than just providing insurance in hard-to-insure markets and instead encompasses the general purpose of encouraging the creation of domestics, we would find the purpose was not legitimate, based on *Ward.* The taxing scheme does, in fact, seem more rationally related to promoting domestics than to encouraging insurance companies to provide policies in the less lucrative areas. There is no indication that taxing domestic companies more, or foreign com-

panies less, would change the fact that foreign companies are less likely to provide insurance in high loss categories and domestics will see an open market and provide the insurance. The taxes imposed do not serve as an incentive to provide insurance in high loss categories.

We, therefore, find that the taxing scheme presently used is unconstitutional and this holding will have prospective application only. Although the usual rule is that of retroactivity, the rule is not without exception. In *Washtenaw Co v State Tax Comm,* 422 Mich 346; 373 NW2d 697 (1985), our Supreme Court gave purely prospective application to its decision requiring that effects of "creative financing" be considered in values of real property used for equalization purposes. The Court noted that the local governments had already collected and spent the tax levies at issue and the administrative burden of reevaluation would be considerable. The importance of the ability to rule prospectively was noted in *Placek v Sterling Heights,* 405 Mich 638, 665; 275 NW2d 511 (1979):

> The benefit of flexibility in opinion application is evident. If a court were absolutely bound by the traditional rule of retroactive application, it would be severely hampered in its ability to make needed changes in the law because of the chaos that could result in regard to prior enforcement under that law.

The importance of flexibility was also pointed out in *People v Smith,* 405 Mich 418, 432; 275 NW2d 466 (1979): "Like all rules of law its wooden application, resulting in fundamental injustice, is intolerable." The *Smith* Court held that extraordinary cases are excepted from the traditional rule of retroactivity; we find that this is an extraordinary case. The receipts from the gross premium

tax over the years have long since been used by the state and are no longer available for disbursement. Refunds of the magnitude involved here would place undue hardship on the people of this state. Furthermore, the state has justifiably relied on the constitutionality of this tax and balanced the state budget accordingly.

Our decision finds support in a decision of the North Dakota Supreme Court which held that equitable considerations favored giving a pure prospective effect to a decision declaring the state's gross premium tax unconstitutional. *Metropolitan Life Ins Co v Comm'r of Dep't of Ins, supra.*

Defendant claims that even if the gross premium tax is found unconstitutional the plaintiffs are barred from recovery by sovereign immunity. We need not discuss this issue because of the pure prospective application we have given to our holding.

Reversed.