605 So.2d 62 (1992)
Tom GALLAGHER, etc., et al., Appellants/Cross Appellees,
v.
MOTORS INSURANCE CORPORATION, et al., Appellees/Cross Appellants.
No. 79061.
Supreme Court of Florida.
July 23, 1992.
*63 Robert A. Butterworth, Atty. Gen. and Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., Tax Section, and Daniel C. Brown, Marguerite H. Davis and Brian M. Nugent of Katz, Kutter, Haigler, Alderman, Davis, Marks & Rutledge, P.A., Tallahassee, for appellants/cross appellees.
Kenneth R. Hart, Steven P. Seymoe and Robert A. Pierce of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellees/cross appellants.
KOGAN, Justice.
We have on appeal a judgment declaring Florida's insurance premium tax scheme, sections 624.509, .512, .514, Florida Statutes, as it existed prior to July 1, 1988,[1] unconstitutional under the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution and the Due Process Clause of the Florida Constitution. The judgment also upheld Florida's retaliatory tax, section 624.429, Florida Statutes (1983-1987), against various constitutional challenges. We have jurisdiction pursuant to article V, section 3(b)(5) of the Florida Constitution. We reverse that portion of the judgment declaring the premium tax unconstitutional but affirm that portion upholding the retaliatory tax.
Prior to July 1, 1988,[2] section 624.509(1)(a)[3] *64 imposed a two percent tax on gross premiums collected on certain insurance policies written in this state. Section 624.512[4] exempted from this tax insurance companies that were organized under Florida law, maintained their home offices in Florida, and complied with the requirements of sections 628.271 and 628.281 by maintaining their records and assets in Florida. Section 624.514[5] granted a fifty percent reduction in the tax rate imposed by section 624.509 to insurers organized under the laws of other jurisdictions that elected to own and maintain a regional home office in Florida and to keep therein certain records pertaining to their activities within the state. Under this statutory scheme, all foreign insurers were liable for premium tax at either the full or the reduced rate; while domestic insurers who complied with the requirements of section 624.512 were exempt.
The Appellees/Cross Appellants (Taxpayers) are foreign corporations licensed to write insurance in Florida who were subject to Florida's insurance premium tax during the years 1983 through 1988. The Taxpayers sought a declaratory judgment that the premium tax scheme unconstitutionally discriminated against them and demanded a refund of all premium taxes paid for the years 1983 through 1988. The Taxpayers also sought relief under 42 U.S.C. section 1983. The Appellants/Cross-Appellees (the State) took the position that Florida's premium tax was constitutional because it advanced legitimate state regulatory goals not set forth in the statute.[6]
*65 After the complaint was filed, the State sought to impose assessments for additional premium tax and retaliatory tax,[7] against several of the Taxpayers for the period 1983 through 1988. The Department also issued pro forma assessments for an increase in retaliatory taxes, for the period 1983 through 1988, which would offset any refund due the Taxpayers should the premium tax be declared unconstitutional.
In response, the Taxpayers amended their complaint to challenge section 624.429, Florida Statutes (1983-1987), as violative of the Equal Protection Clause and the Privileges and Immunities Clause of the United States Constitution and as constituting an unlawful delegation of legislative authority under article II, section 3 of the Florida Constitution. The 1983 and 1984 proposed and pro forma assessments also were challenged as barred by section 95.091, Florida Statutes (1989).
After an evidentiary trial, the trial court found, in connection with the challenge to the premium tax, that: 1) on its face, the premium tax statute discriminates against foreign insurance companies; 2) the purposes set forth in the statute are not legitimate; however, as a matter of law, the State is not limited to those purposes and may rely on purposes not contained in the statute; 3) the purpose advanced  to acquire a greater degree of regulatory control over insurance companies  is a legitimate state purpose; 4) regardless of the activities a foreign insurance company undertakes, the company may only attain the exemption provided to domestic companies if it changes its state of domicile to Florida; 5) forcing a company to change its state of domicile is not a legitimate state purpose for imposing a discriminatory tax; 6) based on the evidence, the premium tax does not, in fact, cause an insurance company to change its state of domicile; however, the legislature could have believed that the tax would have the effect of causing a company to do so and therefore increase the State's ability to regulate it;[8] 7) because the premium tax lacks a legitimate state purpose, it violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution and the Due Process Clause of the Florida Constitution. The court also found the assessment of additional premium taxes void because the premium tax statute was invalid and rendered judgment in favor of the State on the Taxpayers claim under 42 U.S.C. section 1983.
Although the court found the proposed assessments of retaliatory tax for the years 1983 and 1984 barred by section 95.091, it rejected the remainder of the challenges raised in connection with section 624.429, and ordered the premium tax refunds offset by the amount of retaliatory tax owed under the pro forma assessments. Both parties appealed and the district court of appeal certified the cause to this Court as involving a question of great public importance requiring immediate resolution.

*66 HISTORICAL BACKGROUND
From 1869 to 1944 insurance was not considered "commerce" under the Commerce Clause of the United States Constitution. New York Life Ins. Co. v. Deer Lodge County, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332 (1913); Paul v. Virginia, 75 U.S. (8 Wall.) 168, 19 L.Ed. 357 (1869). During that period, state regulation and taxation of the business of insurance was free of Commerce Clause restraints. Then in 1944 the United States Supreme Court receded from its earlier rulings and held insurance to be commerce within the meaning of the Commerce Clause. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). In response to South-Eastern Underwriters, Congress enacted the McCarran-Ferguson Act § 1, 15 U.S.C. §§ 1011-1015 (1982) (original version at ch. 20, § 1, 59 Stat. 33 (1945), which expressly exempted the business of insurance from the restraints of the dormant Commerce Clause,[9] thereby restoring the states' pre-South-Eastern Underwriters power to impose taxing and regulatory requirements on the business of insurance. Western & Southern Life Ins. Co. v. State Bd. of Equalization of Cal., 451 U.S. 648, 653-55, 101 S.Ct. 2070, 2075, 68 L.Ed.2d 514 (1981); Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946). By 1985, at least 28 states employed differential premium taxes similar to that challenged in this case. Metropolitan Life Ins. Co. v. Ward, 470 U.S. 869, 892, 105 S.Ct. 1676, 1689, 84 L.Ed.2d 751 (1985).
After the enactment of the McCarran-Ferguson Act, it was clear that the Commerce Clause no longer limited a state's power to condition the right of foreign insurers to do business within its borders. State Bd. of Ins. v. Todd Shipyards Corp., 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962); Prudential Ins. Co. v. Benjamin, Prudential Ins. Co. v. Hobbs, 328 U.S. 822, 66 S.Ct. 1360, 90 L.Ed. 1602 (1946). However, it was not until 1981 that the United States Supreme Court explicitly held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution limits a state's authority to exclude a foreign corporation from doing business within its boundaries. The Court explained that under this provision more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations are justified only where "the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose." Western & Southern Life, 451 U.S. at 668, 101 S.Ct. at 2083. Applying this rational basis test, the Western & Southern Life Court upheld a California retaliatory tax which was imposed on foreign insurers when the insurers' home states imposed a discriminatory tax on California insurers doing business within their borders. Four years after Western & Southern Life, a premium tax scheme similar to that at issue in this case was held violative of the Equal Protection Clause in Metropolitan Life Ins. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985).

FLORIDA'S PREMIUM TAX
The Taxpayers base their challenges to Florida's premium tax on the United States Supreme Court's decision in Ward. Florida's premium tax scheme is similar to that struck down in Ward. As was the case in Ward, under the Florida scheme, foreign insurance companies were taxed at a higher rate than domestic companies and regardless of actions taken by a foreign company, it could never reduce its gross premiums tax rate to the level paid by *67 domestic companies. See Ward, 470 U.S. at 872, 105 S.Ct. at 1678-79.
The Taxpayers correctly point out that since the Ward decision similar tax schemes have been held unconstitutional in a number of states. See, e.g., Principal Mutual Life Ins. Co. v. Division of Ins., 780 P.2d 1023 (Alaska 1989); Penn Mutual Life Ins. Co. v. Dept. of Licensing and Regulation, 162 Mich. App. 123, 412 N.W.2d 668 (1987); State v. American Bankers Ins. Co., 374 N.W.2d 609 (S.D. 1985); Metropolitan Life Ins. Co. v. Commissioner of the Dept. of Ins., 373 N.W.2d 399 (N.D. 1985). However, based on the trial court's findings in this case, we find Florida's premium tax scheme distinguishable from those found unconstitutional.
The crucial difference between this case and those in which similar tax schemes were held violative of the Equal Protection Clause are the trial court's findings that 1) the purpose advanced by the State of acquiring a greater degree of regulatory control over insurance companies is a legitimate state purpose and 2) "the Legislature could have believed" that the differential tax treatment "would have the effect of causing a company to change its state of domicile and therefore increase the State's ability to regulate such companies." It appears that despite these findings, which are supported by competent substantial evidence, the trial court accepted the Taxpayers contention that under Ward, legitimate regulatory goals cannot be pursued by distinguishing between insurers on the basis of residency. In other words, the trial court appears to have found Florida's premium tax unconstitutional based on the misconception that all otherwise legitimate state purposes are rendered illegitimate if pursued by residency based distinctions. We find this reading of Ward too broad.
In Western and Southern Life, the United States Supreme Court explained that under the Equal Protection Clause, a state may not impose "more onerous taxes or other burdens on foreign corporations than those imposed on domestic corporations, unless the discrimination between foreign and domestic corporations bears a rational relation to a legitimate state purpose." 451 U.S. at 668, 101 S.Ct. at 2083. Thus, a tax scheme, such as the retaliatory tax at issue in Western and Southern Life, that distinguishes based on residency should be sustained if the classification is found to be "rationally related to achievement of a legitimate state purpose." Id. at 657, 101 S.Ct. at 2077. The Court further explained that in making this determination, there are two questions that must be answered: "(1) Does the challenged legislation have a legitimate purpose? and (2) Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?" Id. at 668, 101 S.Ct. at 2083.
The Court later reaffirmed these principles in Ward, recognizing that "the Equal Protection Clause forbids a State to discriminate in favor of its own residents solely by burdening `the residents of other state members of our federation.'" 470 U.S. at 878, 105 S.Ct. at 1681 (quoting Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 533, 79 S.Ct. 437, 444, 3 L.Ed.2d 480 (1959)). In considering Alabama's discriminatory premium tax, the Ward Court recited the appropriate standard of review to be
if the State's purpose [for the residency based classification] is found to be legitimate, the state law stands as long as the burden it imposes is found to be rationally related to that purpose, a relationship that is not difficult to establish.
470 U.S. at 881, 105 S.Ct. at 1683.
The Ward Court went on to hold that the two purposes considered in that case  promotion of domestic business and encouragement of capital investment in the state  were not legitimate when furthered by discrimination. 470 U.S. at 882-83, 105 S.Ct. at 1684; see also Div. of Alcoholic Beverages v. McKesson Corp., 524 So.2d 1000, 1009 n. 2 (Fla. 1988) (promotion of domestic business when accomplished by imposing discriminatory tax against out-of-state competitors is not legitimate state purpose under Equal Protection Clause), rev. on other grounds, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). Ward *68 makes clear that a state may not seek to promote and regulate its own economy "by imposing discriminatorily higher taxes on nonresident corporations solely because they are nonresidents." 470 U.S. at 882 n. 10, 105 S.Ct. at 1683 n. 10. Such is "the very sort of parochial discrimination that the Equal Protection Clause was intended to prevent." 470 U.S. at 878, 105 S.Ct. at 1681.
However, the Ward Court did not address whether an otherwise legitimate state regulatory purpose, such as that found to exist in this case, may be furthered by imposing higher taxes on nonresident insurers where it is reasonable for lawmakers to believe the imposition of the tax differential will promote the regulatory purpose. The only purposes considered in that decision were promotion of domestic business and encouragement of capital investment in state assets and securities. We find it most instructive that the cause was remanded for consideration of fifteen additional purposes advanced by the State of Alabama for the discriminatory tax. 470 U.S. at 875 n. 5, 105 S.Ct. at 1680 n. 5.
If Ward had held, as the Taxpayers contend, that no state purpose is legitimate when furthered by differential tax treatment based on residency, there would have been no need to remand for consideration of the other purposes advanced. This conclusion is consistent with the Court's recognition in Northeast Bancorp, Inc. v. Board of Governors, 472 U.S. 159, 177, 105 S.Ct. 2545, 2555, 86 L.Ed.2d 112 (1985), that Ward stands for the limited proposition that
encouraging the formation of new domestic insurance companies within a State and encouraging capital investment in the State's assets and governmental securities were not, standing alone, legitimate state purposes which could permissibly be furthered by discriminating against out-of-state corporations in favor of local corporations.
(Emphasis added.)
Decisions from other states finding similar taxing schemes unconstitutional under Ward are also distinguishable. In those cases, the purposes advanced for the discriminatory taxes that were not substantially the same as those rejected in Ward were found to be pretextual or the discriminatory taxes were found not to be rationally related to the stated purposes. See, e.g., Principal Mutual Life Ins. Co. v. Division of Ins., 780 P.2d 1023 (Alaska 1989) (even if legitimacy of purposes for discriminatory premium tax scheme were accepted, there was no evidence that those purposes were advanced by the differential tax rates); Penn Mutual Life Ins. Co. v. Dept. of Licensing and Regulation, 412 N.W.2d 668 (Mich. App. 1987) (although making insurance coverage available to residents was legitimate state purpose, differential premium tax rate was not rationally related to promoting that purpose); State v. American Bankers Ins. Co., 374 N.W.2d 609 (S.D. 1985) (purpose advanced for discriminatory premium tax found to be pretextual); Metropolitan Life Ins. Co. v. Commissioner of the Dept. of Ins., 373 N.W.2d 399 (N.D. 1985) (purposes advanced for differential premium tax rates were not legitimate or, if legitimate, premium tax scheme was not rationally related to achievement of those purposes).
We reject the Taxpayers contentions that 1) the only purposes for the taxing scheme that may be considered are those set forth in the statute and 2) even if other purposes may be considered, the State's newly asserted regulatory purpose is merely pretextual. As we recently reiterated in Coy v. Florida Birth-Related Neurological Injury Compensation Plan, 595 So.2d 943, 945 (Fla. 1992) (Quoting Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311, 314 (Fla. 1984), appeal dismissed, 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985)):
"When the state legislature, acting within the scope of its authority, undertakes to exert the taxing power, every presumption in favor of the validity of its action is indulged. Only clear and demonstrated usurpation of power will authorize judicial interference with legislative action. In the field of taxation particularly, the legislature possesses great freedom in classification. The burden is *69 on the one attacking the legislative enactment to negate every conceivable basis which might support it."

(emphasis added); see also, Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) (statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it); McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (same). It is likewise clear that where there is a "plausible" reason for a legislative enactment, it is "`constitutionally irrelevant whether this reasoning in fact underlay the legislative decision.'" United States R.R. Retirement Board v. Fritz, 449 U.S. 166, 178-79, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980) (quoting Fleming v. Nestor, 363 U.S. 603, 612, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)).
Although the regulatory goal now asserted by the State is not expressly set forth in section 624.512, that section incorporates the regulatory requirements of section 628.271[10] as conditions of the tax exemption to domestic insurers. Thus, when these statutes are read in pari materia, an intent to gain regulatory control is discernible from the statutory scheme itself. Moreover, the record in this case supports the conclusion that the regulatory goal advanced by the State clearly is a "conceivable" purpose for the premium tax. Eastern Air Lines, 455 So.2d at 314; see, also, Dandridge, 397 U.S. at 485, 90 S.Ct. at 1161-62.
All of the insurance experts who testified in this case agreed that the objective of gaining control and influence over insurers doing business within the state is reasonable and desirable from an insurance regulator's perspective. The record supports the conclusion that Florida has more control and regulatory influence over a domestic insurer than over a foreign insurer and that Florida is in a better position to protect the interests of Florida policyholders in the event of an insurer's financial instability if the insurer is domiciled in Florida. Because there is no bankruptcy protection for policyholders under federal law, 11 U.S.C. § 109(b)(2), (3), state action to place an insurer in rehabilitation or liquidation is the only protection available to policyholders under such circumstances. Because only the insurer's state of domicile can institute such proceedings, Florida can better safeguard Florida policyholders when it is the insurer's state of domicile.
Indeed, the challenged tax scheme rewarded varying degrees of submission by insurers to the regulatory power and jurisdiction of this state. Insurers that elected to own and occupy a regional office in Florida brought valuable and fixed assets within this state's jurisdiction and maintained records of regional activities within the state and thereby enabled Florida to obtain access to and in rem control over such assets and records without the aid of other jurisdictions. Such regional companies were rewarded by a fifty-percent reduction in premium tax under section 624.514. Whereas, companies that elected to subject themselves to the plenary power of this state's in rem jurisdiction by establishing domicile in Florida and maintaining their records and the majority of their assets *70 in this state were offered an exemption from the premium tax under section 624.512.
On this record, it cannot be said that Florida's premium tax was designed solely to promote domestic industry and economy and we do not believe that taxing foreign insurers at a higher rate than domestics in order to gain greater regulatory control is the type of "parochial discrimination that the Equal Protection Clause was intended to prevent." Ward, 470 U.S. at 878, 105 S.Ct. at 1681. Ward does not require a contrary conclusion. See, e.g., Associated General Contractors of California, Inc. v. City and County of San Francisco, 813 F.2d 922, 943 (9th Cir.1987) (city ordinance giving various preferences to local businesses in an attempt to remove burden on local businesses that was not shared by nonresident businesses was upheld because it did not discriminate against nonresidents solely because they were nonresident).
Finally, on this record, it is "at least debatable" that a rational relationship exists between the premium tax and the objective of increased regulatory control. See Ward, 470 U.S. at 881, 105 S.Ct. at 1683 (equal protection challenge cannot prevail where it is at least debatable that there is a rational relationship between challenged statute and legitimate state purpose); Western & Southern Life, 451 U.S. at 674, 101 S.Ct. at 2086 (same). A rational relationship exists where, as here, it is found that the legislature rationally could have believed that the challenged statutory scheme would promote the asserted legislative objective. Whether the statutory scheme in fact would promote the legislative objective is not dispositive. Western & Southern Life, 451 U.S. at 672-73, 101 S.Ct. at 2085.
Accordingly, having determined that Florida's premium tax scheme was rationally related to a legitimate state purpose, we reverse the judgment of the trial court to the extent that it finds sections 624.509, .512, .514 invalid under the United States and Florida Constitutions.[11] We also reverse that portion of the judgment that finds the proposed assessments of premium tax invalid.

RETALIATORY TAX
Next, we affirm that portion of the judgment under review that upholds section 624.429[12] against the Equal Protection and Privileges and Immunities challenges.
As noted by the trial court, Florida's retaliatory tax is similar in structure to the retaliatory tax that was upheld against similar challenges in Western & Southern Life. Section 624.429(1),[13] imposes a tax upon a foreign insurer doing business in Florida equal to the difference between all taxes, licenses, and fees imposed on Florida insurers by the foreign insurer's state or country of domicile and all taxes, including premium taxes, licenses, and fees imposed on the foreign insurer by the State of Florida. In addition to taxes and fees, section 624.429(1) also imposes on a foreign insurer *71 "fines, penalties, deposit requirements, or other material obligations, prohibitions, or restrictions," that are imposed on Florida insurers by the other jurisdiction and are in excess of similar obligations imposed on the foreign insurer by Florida law.
The Taxpayers' Privileges and Immunities challenge was properly rejected in light of the clear pronouncement in Western & Southern Life that the Privileges and Immunities Clause of the United States Constitution is inapplicable to corporations such as the Taxpayers. 451 U.S. at 656, 101 S.Ct. at 2077.
Western & Southern Life also made clear that retaliatory taxes, which "have been a common feature of insurance taxation for over a century," are rationally related to the states' legitimate interest in promoting "the interstate business of domestic insurers by deterring other States from enacting discriminatory or excessive taxes." Id. at 668, 101 S.Ct. at 2083. Because it is at least fairly debatable that the Florida legislature enacted section 624.429 with this well recognized purpose in mind, the Equal Protection challenge also was properly rejected. Id. at 674, 101 S.Ct. at 2086.
Next, the Taxpayers contend that by tying the retaliatory tax to the laws of other jurisdictions, which may change from year to year, the legislature has unconstitutionally delegated to other legislatures its authority to determine the amount of tax due the State of Florida. We do not agree.
Article II, section 3 of the Florida Constitution provides:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any power appertaining to either of the other branches unless expressly provided herein.
This mandate has been construed to prohibit the legislature, absent constitutional authority to the contrary, from delegating its legislative power to others. D'Alemberte v. Anderson, 349 So.2d 164 (Fla. 1977).
It is true that we have consistently held that it is an unconstitutional delegation of legislative power for the legislature to adopt future legislative or administrative actions of jurisdictions outside Florida. See, e.g., Eastern Air Lines, Inc. v. Dept. of Revenue, 455 So.2d 311, 314 (Fla. 1984), appeal dismissed, 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985); State v. Welch, 279 So.2d 11 (Fla. 1973); Freimuth v. State, 272 So.2d 473, 476 (Fla. 1972). However, in this case, incorporation of future enactments of foreign jurisdictions into the formula for measuring Florida's retaliatory tax is entirely consistent with the recognized objective of such taxes  affecting the taxing policies of other jurisdictions. It is only logical that if the tax is to achieve its intended purpose, it must operate in relation to both current and future enactments and policies of other jurisdictions that burden Florida insurers. It follows that incorporation of future enactments of a foreign insurer's state of domicile as a reference point for determining the retaliatory tax due from that insurer in no way substantively changes the law. The legislature has merely set forth the manner, consistent with the underlying legislative objective, by which the Department of Revenue is to determine the tax due under section 624.429. See Eastern Air Lines, 455 So.2d at 316. This is conceptually no different than the statutory provision which was upheld in Eastern Air Lines wherein the legislature directed the Department of Revenue to measure a change in fuel tax burden by as-yet-unpromulgated versions of the federal Consumer Price Index. 455 So.2d at 316; See also Gindl v. Department of Education, 396 So.2d 1105 (Fla. 1979) (upheld statutory provision that required a computation based on the most recent publication of the Florida Price Level Index). Accordingly, we also affirm the trial court's rejection of this challenge to section 624.429.

STATUTE OF LIMITATIONS
The State does not challenge that portion of the judgment finding the proposed assessment of retaliatory tax for the years 1983 and 1984 barred by section 95.091, Florida Statutes (1989). Under the statute *72 of limitations set forth in section 95.091(3)(a)1.a., the State is precluded from assessing tax under chapter 624 beyond five years after the date the tax is due, any return with respect to the tax is due, or such return is filed, whichever occurs later. In light of this provision, the proposed assessments of premium tax for the years 1983 and 1984 are likewise barred.
Accordingly, we reverse that portion of the judgment finding sections 624.509, .512, .514, Florida Statutes (1983-1987), unconstitutional. We also reverse that portion of the judgment invalidating the proposed assessments of premium tax for the years 1985 through 1988. We affirm that portion of the judgment upholding section 624.429 and that portion finding the proposed assessments of taxes under that provision for the years 1983 through 1984 barred. The cause is remanded for further proceedings consistent with this opinion.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW and GRIMES, JJ., concur.
HARDING, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
HARDING, Justice, concurring in part, dissenting in part.
I concur with the majority in holding that the retaliatory tax provided for in section 624.429, Florida Statutes (1983-1987), is constitutional based on the authority of Western & Southern Life Insurance Co. v. State Board of Equalization, 451 U.S. 648, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). However, I respectfully dissent from the majority's holding that the premium tax structure provided for in sections 624.509, .512, .514, Florida Statutes, as it existed prior to July 1, 1988, is constitutional. I find that Metropolitan Life Insurance Co. v. Ward, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985), is controlling and requires this Court to declare the statutes unconstitutional. Although the majority characterizes such a reading of Metropolitan as "too broad," majority opinion at 67, I find the reading to be correct.
The Alabama statute under scrutiny in Ward is virtually identical to the Florida statutes at issue here. In Ward, the United States Supreme Court held that:
The crucial distinction ... lies in the fact that Alabama's aim to promote domestic industry is purely and completely discriminatory, designed only to favor domestic industry within the State, no matter what the cost to foreign corporations also seeking to do business there. Alabama's purpose ... constitutes the very sort of parochial discrimination that the Equal Protection Clause was intended to prevent. As Justice Brennan, joined by Justice Harlan, observed in his concurrence in Allied Stores of Ohio, Inc. v. Bowers, this Court always has held that the Equal Protection Clause forbids a State to discriminate in favor of its own residents solely by burdening "the residents of other state members of our federation." Unlike the retaliatory tax involved in Western & Southern, which only burdens residents of a State that imposes its own discriminatory tax on outsiders, the domestic preference tax gives the "home team" an advantage by burdening all foreign corporations seeking to do business within the State, no matter what they or their States do.
470 U.S. at 878, 105 S.Ct. at 1681-82 (citations omitted). The Supreme Court's reasoning applies to the Florida statutes as well.
I do not find that the record in this case supports the majority's conclusion that the premium tax statute advances a regulatory goal which would give the statute legitimacy.
I would affirm the trial court's determination that the premium tax is unconstitutional because it violates the Equal Protection Clause of the Constitution.
OVERTON, J., concurs.
NOTES
[1] The tax scheme at issue was repealed effective July 1, 1988 by chapter 87-99, § 32, Laws of Fla.
[2] The 1987 versions of the statutes at issue, which are substantially the same as prior versions, will be used in this opinion.
[3] Section 624.509, Florida Statutes (1987), provided in pertinent part:

624.509 Premium tax; rate and computation. 
(1) In addition to the license taxes provided for in this chapter, each insurer shall also annually ... pay to the Department of Revenue a tax on insurance premiums, risk premiums for title insurance, or assessments, including membership fees and policy fees and gross deposits received from subscribers to reciprocal or interinsurance agreements, and on annuity premiums or considerations, received during the preceding calendar year, the amounts thereof to be determined as set forth in this section, to wit:
(a) An amount equal to 2 percent of the gross amount of such receipts on account of life and health insurance policies covering persons resident in this state and on account of all other types of policies and contracts (except annuity policies or contracts taxable under paragraph (b)) covering property, subjects, or risks located, resident, or to be performed in this state... .
[4] Section 624.512, Florida Statutes (1987), provided in pertinent part:

624.512 Domestic insurers; exemption. 
(1)(a) An insurer which is organized and existing under the laws of this state and which maintains its home office in this state shall not be required to pay the tax on insurance and annuity premiums, assessments, or considerations as imposed under ss. 624.509 and 624.510, except as provided in s. 624.513.
(b) As used in this section, "home office" means an office performing or directing and supervising from this state the selling, underwriting, issuing, and servicing of insurance, including the following functions relating thereto: approval or rejection of applications for insurance and issuance of policies thereon; approval of payment of all types of claims; maintenance in this state of records to provide policyholder information and service and the records and materials required to be kept and prepared pursuant to ss. 628.271 and 628.281; advertising and publications; public relations; and supervision and training of sales and service forces.
[5] Section 624.514, Florida Statutes (1987), provided in pertinent part:

624.514 Regional home offices of foreign insurers; credits on premium tax liability. 
(1) A foreign or alien insurer formed by or under the laws of any other state or foreign country which is subject to the taxes imposed by ss. 624.509 and 624.510 and which owns and substantially occupies any building in this state as a regional home office, as defined in subsection (2), shall be entitled to a credit against such tax in an amount equal to 50 percent of the amount of the tax as determined under such sections... .
(2) A "regional home office," for the purposes of this section, means an office performing, for an area covering three or more states or covering two states and one or more foreign countries, the selling, underwriting, issuing, and servicing of insurance, including the following functions relating thereto: approval or rejection of applications for insurance and issuance of policies thereon; approval of payment of all types of claims; maintenance of records to provide policyholder information and service; advertising and publications; public relations; and supervision and training of sales and service forces.
[6] In section 624.512(2), Florida Statutes (1987), the legislature expressly found that

a premium tax exemption for domestic insurers promotes the public interest for the following reasons:
(a) Domestic insurers are required to pay corporate income tax in this state;
(b) Domestic insurers are required to invest their assets in this state;
(c) Domestic insurers are more likely to invest heavily in real estate in this state and thereby increase the local tax base;
(d) Domestic insurers employ many residents of this state;
(e) Domestic insurers contribute to the economy of the state by utilizing local services and local businesses.
[7] Section 624.429, Florida Statutes (1983-1987), imposed a tax upon a foreign insurer doing business in Florida equal to the difference between all taxes, licenses, and fees imposed by that insurer's state or country of domicile on Florida insurers and all taxes, including premium tax, licenses, and fees imposed by the State of Florida on the foreign insurer. Section 624.429(3) exempted from the retaliatory tax those foreign insurers who maintain a regional home office in Florida.
[8] Although the Taxpayers' expert contested the degree to which Florida's tax differential would be effective in encouraging the formation of domestic insurers because he could find no statistically significant correlation between states offering domestic premium tax exemptions and states with the largest number of domiciled insurers, there was testimony that the residency-based tax differential, in fact, did encourage the formation of several new domestic insurance companies within the state. Moreover, the Taxpayers' expert agreed that economic theory supports the view that the tax preference would encourage the formation of domestic insurers.
[9] Section 1 of the McCarran-Ferguson Act, 15 U.S.C. § 1011 (1982), provides in pertinent part:

Congress declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.
Section 2(a) of the act, 15 U.S.C. § 1012(a), provides:
The business of insurance ... shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
[10] Section 628.271, Florida Statutes (1987), provided in pertinent part:

628.271 Office and records; penalty for unlawful removal of records. 
(1) Every domestic insurer shall have an office in this state and shall keep therein complete records of its assets, transactions, and affairs, specifically including:
(a) Financial records;
(b) Corporate records;
(c) Reinsurance documents;
(d) Access to all accounting transactions and access in this state, upon demand by the department, to all original accounting documents;
(e) Claim files; and
(f) Payment of claims, in accordance with such methods and systems as are customary or suitable as to the kind or kinds of insurance transacted.
(2) Every domestic insurer shall have and maintain its assets in this State, except as to:
(a) Real property and personal property appurtenant thereto lawfully owned by the insurer and located outside this state, and
(b) Such property of the insurer as may be customary, necessary, and convenient to enable and facilitate the operation of its branch offices, regional home offices, and operations offices, located outside this state as referred to in s. 628.281.
[11] Because of our resolution of this claim, we need not address the Taxpayers section 1983 claim or their challenge to the pro forma assessments of retaliatory taxes which were used to offset the refunds of premium tax.
[12] Section 624.429, Florida Statutes (1987), provided in pertinent part:

624.429 Retaliatory provision, insurers. 
(1) When by or pursuant to the laws of any other state or foreign country any taxes, licenses, and other fees, in the aggregate, and any fines, penalties, deposit requirements, or other material obligations, prohibitions, or restrictions are or would be imposed upon Florida insurers or upon the agents or representatives of such insurers, which are in excess of such taxes, licenses, and other fees, in the aggregate, or which are in excess of the fines, penalties, deposit requirements, or other obligations, prohibitions, or restrictions directly imposed upon similar insurers, or upon the agents or representatives of such insurers, or such other state or country under the statutes of this state, so long as such laws of such other state or country continue in force or are so applied, the same taxes, licenses, and other fees, in the aggregate, or fines, penalties, deposit requirements, or other material obligations, prohibitions, or restrictions of whatever kind shall be imposed by the department upon the insurers, or upon the agents or representatives of such insurers, of such other state or country doing business or seeking to do business in this state.
[13] Currently found in section 624.5091, Florida Statutes (1991).