816 So.2d 1145 (2002)
AGENCY FOR HEALTH CARE ADMINISTRATION, Appellant,
v.
Nathan M. HAMEROFF, M.D., et al., Appellee.
No. 1D01-732.
District Court of Appeal of Florida, First District.
April 26, 2002.
Rehearing Denied June 3, 2002.
*1146 Gregory J. Philo of Agency for Health Care Administration, Tallahassee, for Appellant.
Raymond T. Elligett, Jr. of Schropp, Buell & Elligett, P.A., Tampa, for Amici Florida Society of Ambulatory Surgical *1147 Centers and Federated Ambulatory Surgery Association.
James M. Barclay of Ruden McClosky Smith Schuster & Russell, P.A., Tallahassee for Amicus Florida Radiological Society, Inc.
Murray B. Silverstein of Law Offices of Murray B. Silverstein, P.A., St. Petersburg; Cynthia A. Mikos of Cynthia A. Mikos, P.A., Brandon; M. Stephen Turner, P.A. and David K. Miller, P.A. of Broad and Cassel, Tallahassee, for Appellee.
ALLEN, C.J.
The appellees in this interlocutory appeal brought a consolidated class action lawsuit against the appellant challenging the constitutionality of the Public Medical Assistance Trust Fund (PMATF) assessment set forth in section 395.7015, Florida Statutes. They contended that because the funds accumulated in the PMATF are earmarked exclusively for reimbursing Medicaid inpatient hospital costs, they derive no benefit commensurate with the burden imposed by the assessment and are required to contribute to the fund where no such burden is placed upon the general public. Thus, they argued that their rights under the due process and equal protection guarantees of the federal and state constitutions were violated. The trial court declared section 395.7015 unconstitutional and enjoined the appellant from imposing further assessments thereunder. The court reserved jurisdiction to determine the appropriate refund due the appellees, thereby rendering its order nonfinal. Pursuant to Florida Rule of Appellate Procedure 9.130(a)(3)(B), the appellant filed this interlocutory appeal from only that portion of the court's order by which injunctive relief was awarded. We reverse and remand with directions that the trial court dissolve the injunction.
In 1984, the Florida Legislature enacted the Health Care Access Act in an effort to improve access to medical care for indigent persons. The Act established, among other things, the PMATF, which was financed by a 1.5% assessment on the net operating revenues of Florida hospitals, as well as appropriations from state general revenue and federal Medicaid matching funds. The PMATF is currently codified as section 409.918, Florida Statutes, and provides the following statement of legislative intent:
It is declared that access to adequate health care is a right which should be available to all Floridians. However, rapidly increasing health care costs threaten to make such care unaffordable for many citizens. The Legislature finds that unreimbursed health care services provided to persons who are unable to pay for such services cause the cost of services to paying patients to increase in a manner unrelated to the actual cost of services delivered. Further, the Legislature finds that inequities between hospitals in the provision of unreimbursed services prevent hospitals that provide the bulk of such services from competing on an equitable economic basis with hospitals that provide relatively little care to indigent persons. Therefore, it is the intent of the Legislature to provide a method for funding the provision of health care services to indigent persons, the cost of which shall be borne by the state and by hospitals that are granted the privilege of operating in this state.
Pursuant to the statute, payments from the PMATF are dispersed "solely for the purposes specified by law." § 409.918(2), Fla. Stat. Currently, all funds are dedicated to paying Medicaid inpatient hospital costs.
*1148 In 1991, the legislature expanded the PMATF assessment beyond hospitals to include ambulatory surgical centers, diagnostic-imaging centers, freestanding radiation therapy centers, and clinical laboratories. See § 395.7015, Fla. Stat. Radiation therapy centers were subsequently excluded from the statute in 1998, and thus are not affected by the trial court's injunction. In 2000, the legislature reduced the assessment for the remaining three groups and for hospital outpatient services to 1% of their annual net operating revenue. The assessment rate for hospital inpatient services remains at 1.5%.
As both parties acknowledge, the assessment at issue in this case is similar, both in operation and effect, to the funding scheme utilized in the Florida BirthRelated Neurological Injury Compensation Plan, which established a no-fault compensation system for certain neurologically injured infants. In Coy v. Florida Birth-Related Neurological Injury Compensation Plan, 595 So.2d 943 (Fla.1992), the Florida Supreme Court addressed due process and equal protection challenges to the Plan's funding scheme brought by licensed physicians who did not practice obstetrics and thus were excluded from participating in the plan, but who were still subject to its annual assessment. Concluding that the Plan constituted a "tax" within the meaning of Florida law, the Court noted the proper test for gauging the validity of a taxing statute:
When the state legislature, acting within the scope of its authority, undertakes to exert the taxing power, every presumption in favor of the validity of its action is indulged. Only clear and demonstrated usurpation of power will authorize judicial interference with legislative action. In the field of taxation particularly, the legislature possesses great freedom in classification. The burden is on the one attacking the legislative enactment to negate every conceivable basis which might support it. The state must, of course, proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. A statute that discriminates in favor of a certain class is not arbitrary if the discrimination is founded upon a reasonable distinction or difference in state policy.
Coy, 595 So.2d at 945 (quoting Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311 (Fla.1984)). Applying this test, the Court noted that record evidence supported the trial court's finding that there was a medical malpractice crisis engulfing the State that had severely disrupted the delivery of health care services and the day-to-day operations of hospitals, and that as a result of this disruption, all healthcare providers, especially physicians, were adversely affected. Thus, the Court concluded that there was a rational basis for the Plan's assessment of nonobstetrical physicians because "all physicians, regardless of whether they practice obstetrics, derive a benefit from this legislation that is greater in degree than that derived by the general public."
The appellees in the present case maintain that, unlike the situation in Coy, they receive no direct benefit from their inclusion in the PMATF assessment greater in degree than that derived by the general public or commensurate with the burden they shoulder, and that they are being arbitrarily called upon to contribute to the reimbursement of hospital Medicaid inpatient costs. In essence, they argue that they are subsidizing their competitors under the guise of preserving access to healthcare for indigents. As the trial court recognized, their argument is compelling because an examination of the incidence and effect of this assessment suggests that these groups bear a significant financial burden and receive little or no *1149 direct benefit because of their ineligibility to receive proceeds from the PMATF. Further, the legislature provided no indication of its intent in extending the assessment beyond hospitals, and the appellant presented virtually no factual justification for the challenged law.
But the absence of record justification for the legislation is not dispositive. As explained by the Florida Supreme Court in Coy and Eastern Air Lines, the state is not obligated to demonstrate the constitutionality of the legislation. The burden is instead upon the party challenging the legislation to negate every conceivable rational basis which might support it. Coy and Eastern Air Lines are applications of long-standing decisional law of the United States Supreme Court under which the judiciary extends great deference to federal, state, and local lawmakers when reviewing economic legislation under due process and equal protection principles where no fundamental right is impaired and no suspect class is offended. This true presumption of constitutionality is a paradigm of judicial restraint and an acknowledgment of separation of powers principles. As the Court has explained, "We refuse to sit as a `superlegislature to weigh the wisdom of legislation'.... Whether the legislature takes for its textbook Adam Smith, Herbert Spencer, Lord Keynes, or some other is no concern of ours." Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). Thus, the party challenging the legislation bears the burden of negating every conceivable rational basis which might support it. Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The absence of facts or evidence explaining the legislature's purpose in enacting the statute is of no consequence, and it is entirely irrelevant whether the conceived reasons actually motivated the legislature. Federal Communications Commission v. Beach Communications, Inc., 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993).
Applying these principles to the present case, a legislator might rationally assume that the appellees in the present case provide the same or similar services that many hospitals provide, but that the hospitals are forced to impose higher charges for these services because they are burdened with the tremendous expense of indigent inpatient care. Therefore, it is conceivable that the legislature extended the PMATF assessment to these three groups in order to level the economic playing field and resolve a competitive or financial advantage, something that has long been recognized as a legitimate basis for upholding economic legislation. See, e.g., Beach Communications, 508 U.S. at 318-320, 113 S.Ct. 2096; Eastern Air Lines, 455 So.2d at 314; People Against Section 561.501, Inc. v. Department of Business Regulation, 587 So.2d 644 (Fla. 1st DCA 1991). This comports with the legislature's finding in section 409.918, Florida Statutes, that unreimbursed health care services cause the cost of services to paying patients to increase in a manner unrelated to the actual cost of services delivered and hamper the ability of hospitals providing these unreimbursed services to compete. The appellees point out that they are precluded from providing any inpatient hospital services. But a legislator might rationally conclude that it is this very preclusion that imparts a significant financial advantage. The appellees further protest that there is, in fact, no such competition or financial advantage. Again, however, it is not within the province of the judiciary to decide on the wisdom and utility of the legislature's action, but rather to determine whether any conceivable set of facts arguably supports it. Even if the *1150 assumptions underlying the rationale are erroneous, "the very fact that they are `arguable' is sufficient, on rational-basis review, to `immuniz[e]' the congressional choice from constitutional challenge." Beach Communications, 508 U.S. at 320, 113 S.Ct. 2096 (quoting Vance v. Bradley, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979)); see also, Panama City Medical Diagnostic Ltd. v. Williams, 13 F.3d 1541 (11th Cir.1994).
Because there is a conceivable rational basis upon which the legislature might have extended the PMATF assessment to these three groups, we conclude that the trial court erred in awarding injunctive relief. We accordingly remand this case with directions that the trial court dissolve the injunction.
REVERSED AND REMANDED.
MINER and DAVIS, JJ., concur.